P1S5shaC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ILYASAH SHABAZZ, et al.,

 4                  Plaintiffs,              New York, N.Y.

 5            v.                             24 Civ. 8680 (DEH)

 6   THE UNITED STATES OF AMERICA,
     et al.,
 7
                    Defendants.
 8
     ------------------------------x
 9
                                            January 28, 2025
10                                          2:05 p.m.

11   Before:

12                       HON. DALE E. HO,

13                                          U.S. District Judge

14

15                       APPEARANCES

16   BEN CRUMP LAW PLLC
          Attorneys for Plaintiffs
17   BY:   NABEHA SHAER
               -and-
18   BELDOCK, LEVINE & HOFFMAN, LLP
     BY:   LUNA DROUBI
19         TALA ALFOQAHA

20   MURIEL GOODE-TRUFANT
          Corporation Counsel for the City of New York
21   BY:   TOBIAS ZIMMERMAN
          Assistant Corporation Counsel
22
     DANIELLE R. SASSOON
23        Acting United States Attorney for the
          Southern District of New York
24   BY:   DANIELLE MARRYSHOW
          JEFFREY S. OESTERICHER
25        Assistant United States Attorneys
```

P1S5shaC

```
 1              (Case called)
 2              THE DEPUTY CLERK:  Counsel, can you please state your
 3     names for the record, starting with the plaintiffs.
 4              MS. SHAER:  Good afternoon.  Nabeha Shaer with the Ben
 5     Crump law firm on behalf of the plaintiffs.
 6              MS. DROUBI:  Luna Droubi Beldock, Levine & Hoffman on
 7     behalf of the plaintiffs.  Good afternoon, your Honor.
 8              MS. ALFOQAHA:  Good afternoon, your Honor.  Tala
 9     Alfoqaha with Beldock, Levine & Hoffman on behalf of the
10     plaintiffs.
11              THE COURT:  Good afternoon.  Please have a seat.
12              MR. ZIMMERMAN:  Good afternoon, your Honor.  Tobias
13     Zimmerman, New York City Law Department, on behalf of the City
14     of New York.
15              THE COURT:  Good afternoon.
16              MS. MARRYSHOW:  Good afternoon.  Danielle Marryshow
17     for the United States.
18              MR. OESTERICHER:  Jeff Oestericher AUSA for the United
19     States.
20              THE COURT:  Good afternoon Ms. Marryshow and
21     Mr. Oestericher.  Nice to see you again.
22              So we are here for an initial conference in this
23     matter and I wanted to talk to you all, in part, because of the
24     disagreement between you all as to whether or not discovery
25     ought to commence.  Now, I usually don't pause discovery merely
```

P1S5shaC

1    because of the filing of a motion to dismiss but I know the

2    government plans on -- defendants, I should say, plan on

3    raising arguments that the claims here are time-barred.  I'm

4    not sure if there are other arguments that you are able to

5    preview now.  I'm not looking for oral argument on the

6    substance of the motions, but just getting a sense of what it

7    is you are planning on arguing I think will help me understand

8    whether or not it is appropriate for me to enter a case

9    management plan or if there should be some pause in that and

10   maybe some issues to resolve before we do that.  So, maybe I

11   could just hear from the government.  The federal government.

12            MS. MARRYSHOW:  Good afternoon, your Honor.

13            You are absolutely right.  I think chief among our

14   arguments is the two-year time bar for FTCA claims that leads

15   into sort of a separate exhaustion issue but those two things

16   are related but it is really based on the time bar.  We are

17   also going to argue that they have failed to state a claim of

18   the various torts that the plaintiffs have listed under the

19   FTCA cause of action.  And, as to the individual defendants, I

20   just want to raise this issue to consider -- the U.S.

21   Attorney's office does not represent any of the individual

22   defendants because they haven't been served and then, once they

23   are served, it is an optional process for them so if they do

24   not want us to represent them then they can get their own

25   counsel; if they do, then there is a process for that.  And

P1S5shaC

1   maybe I am getting a bit ahead of myself, but with respect to

2   say the motion to dismiss, I think another thing that it might

3   be worth discussing is whether your Honor would want piecemeal

4   briefing or an omnibus brief after some period of time for

5   plaintiffs to figure out whether and how they're going to serve

6   the individual defendants.

7           I am happy to answer other questions.  I think that

8   was maybe a little scattered, but.

9           THE COURT:  No, no.  That was good.  It gave me a good

10  overview that I needed, so thank you.  I might come back to you

11  and thanks for identifying the service issue.  I probably

12  actually should have started there but since we are on the

13  topic of a motion to dismiss, maybe I could turn to

14  Mr. Zimmerman.  I don't know if the City has come to a

15  determination as to whether or not you plan on moving to

16  dismiss or joining the federal government's motion for a stay.

17          MR. ZIMMERMAN:  Pardon me in advance, your Honor.  I

18  have a little bit of a cold today, but we have decided the City

19  is going to answer the complaint, we are not going to move to

20  dismiss at this juncture.  While we think that there are

21  numerous arguments for failure to state a claim, there are a

22  few where there may be factual issues that would prevent a

23  determination, in particular on the statute of limitations

24  arguments, there is going to be factual questions of who knew

25  what and when did they know it.  So, rather than move piecemeal

P1S5shaC

1    or get a piecemeal ruling, we are prepared to answer the

2    complaint and move on to the next step.  However, that being

3    said, I think the discovery in this case is very different than

4    most of the cases we deal with and for one thing, a lot of the

5    documents that are going to be relevant, plaintiffs should

6    already have.  They have done all this research.  And so, even

7    though the original documents may be in the archives of us or

8    the federal government, we are going to need the plaintiffs to

9    help lead the way to what they're looking for and I would

10   rather see that done in a congenial, mediated fashion rather

11   than just throwing document requests at each other and spending

12   lots of hours writing objections that no one is going to read.

13   So, while we are not going to join in a motion to stay

14   discovery, we would ask that discovery proceed a little more

15   tentatively and carefully than just go at it, start serving

16   requests.

17          On the matter of the individual defendants, in fact

18   the son of one of the named individual defendants is here,

19   Mr. Broderick, who is the son of former commissioner.  There

20   are going to be all kinds of issue with that.  One thing that I

21   am not familiar with as a civil rights litigator is I know

22   nothing about trusts and estate law, your Honor, but my general

23   impression would be that once an estate is probated and closed

24   it is not susceptible to suit.  So if we get requests from

25   those estates for representation, we will obviously evaluate

P1S5shaC

1    those.  There may be separate motions to be made on behalf of

2    individual defendants who come to the City requesting

3    representation.  So, right now I speak only for the City and I

4    will say we are planning to answer but we would rather not go

5    full bore with discovery until there has been discussions.

6         THE COURT:  Maybe for clarification, when you say not

7    full bore on discovery, what precisely is it that you would

8    propose?

9         MR. ZIMMERMAN:  Well, I mean so a lot of the evidence

10   in this case, your Honor -- if your Honor is not aware there is

11   a documentary on Netflix that goes over the full story and big

12   pieces of that are derived from interviews and stuff done at

13   the New York City Archives.  I have not yet reached out to the

14   Archives.  In this instance -- I actually did a short stint

15   working over there so I know some of the people but it is not a

16   kind of thing where it is not the traditional thing where you

17   ask us for documents and we find reasons to not give them to

18   you.  Most of the documents are going to be public already, it

19   is a question of identifying them and locating them.  Right?

20   So, rather than spending a lot of time writing formal document

21   requests, I would rather sit down with the plaintiffs and say

22   let's see what we have, what we can get, and then what do we

23   need to go look for rather than the slow process of you serve

24   me, 30 days later I serve you, you come back and tell me my

25   objections are unfounded, I come back and tell you why they're

P1S5shaC

1  not, then we come to your Honor.  And that doesn't seem very

2  efficient to us.

3          THE COURT:  Gotcha.

4          Can I ask you a separate question and if you are aware

5  of the answer?  The Aziz case that was in the Eastern District

6  of New York, how much, if any discovery, was documentary

7  discovery was produced in that case?

8          MR. ZIMMERMAN:  I believe there was a considerable

9  amount.  I have been made aware that I need to go get the file.

10  I haven't completed that task yet.  But I believe there is

11  considerable documents.  The other place there may be

12  documents --

13          THE COURT:  Would those be retained in some place?

14          MR. ZIMMERMAN:  Oh yes, yes, yes.  If they were

15  produced in the case they'll be in the law department either in

16  archives or our office.  The other place where there may be

17  considerable overlap it is Handschu litigation where, if your

18  Honor is familiar, concerned the special operations division

19  and their policing of the various movements in the '60s and

20  '70s.  All of that documentation has been handled under consent

21  decree one but of the plaintiff attorneys who is not here today

22  told me he was going to reach out to a contact to find out what

23  he could about that case.

24          THE COURT:  OK.  Thank you for that.  I appreciate it.

25          May I turn to Ms. Shaer?  So let me start with the

P1S5shaC

1   service issue which is where I probably should have started.

2   Do you have a game plan for service on the individual

3   defendants?  I think the time for that has been extended

4   through middle of March; is that right?

5            MS. SHAER:  On the extension of time --

6            THE COURT:  I'm sorry if I have that wrong.

7            MS. SHAER:  I don't think we have requested the

8   extension yet but we likely will.  We will likely be doing so.

9   We have the 40 individuals, out of those we are in the process

10  of 15 of them.  It is including a lot of research, particularly

11  into the surrogate's court trying to find correct addresses for

12  these individuals, so we have been knee-deep in a lot of

13  research to make sure the individuals are, in most cases the

14  estates are going to be served but, as you reference, we likely

15  will need to ask for an extension of time on those.

16           THE COURT:  I must have gotten it mixed up with

17  another matter.  I apologize.

18           MS. SHAER:  That's OK.

19           THE COURT:  So the United States hasn't filed a motion

20  to dismiss yet or a motion to stay discovery but it is helpful

21  for me in trying to figure out what the best way is to

22  structure the case going forward, if you have any kind of sense

23  for what your position is with respect to the timeliness of any

24  FTCA claims.

25           MS. SHAER:  Yes, we do believe that we are timely on

P1S5shaC

```
 1    the FTCA claims.  Also to mention, on the SOL, the statute of

 2    limitations for 1983 conspiracy claims is three years, and I

 3    think we are prepared to argue anything that is needed to

 4    solidify that the FTCA claims are argued -- are brought in a

 5    timely manner.

 6          THE COURT:  Again, we don't have the United States'

 7    motion yet and I am not asking you obviously to tell me all of

 8    your substantive arguments in response but I do have a sense

 9    anyway, or can you give me a preview, without prejudice to

10    making other arguments, why your claims against the United

11    States are timely.

12          MS. SHAER:  Absolutely.

13          So, for one argument so much of the information has

14    been hidden historically from the family and from the public

15    very intentionally through defendants' actions.  One of the

16    most insightful things is, through the DN investigation,

17    verifiable information has been released or parts of it has

18    been released, which brought us to realize how deep the

19    conspiracy between defendants was in the assassination of

20    Malcolm.  And so, through that DA investigation we got some

21    insight on information and documents that are available, most

22    of which still has not been provided to the public nor to the

23    plaintiff's counsel in the related case.  So, that is some of

24    the information that we actually would seek to get from the

25    defendants.
```

P1S5shaC

 1          THE COURT:  Can you remind me what year the DA's

 2   investigation was?

 3          MS. SHAER:  In 2021, November 2021.

 4          THE COURT:  I should know the answer to this but was

 5   there a final report produced by the DA's office?  And that was

 6   in November '21?

 7          MS. SHAER:  That is my understanding, there was a

 8   final report, and the exonerations, more importantly, happened

 9   at that time.

10          THE COURT:  Right.  OK.

11          And your view is that I should -- you are asking me to

12   order the case management plan which would call for initial

13   disclosures to be made in early February and for discovery to

14   commence immediately?

15          MS. SHAER:  Yes.  That's correct.  And I think as a

16   preliminary step there has been a lot of documents have been

17   produced whether to the plaintiff's counsel in the related case

18   or for the DA investigation that we would also seek and that

19   would really help guide us going forward as well.  And there is

20   a number of other types of documents and requests that we are

21   prepared to make as well.

22          THE COURT:  Let me come back to the defendants and let

23   me ask you about the documents that have been produced in other

24   cases.  What I heard from you, Mr. Zimmerman, is that the

25   collection of documents that were produced in the Aziz

P1S5shaC

1   litigation are basically sitting in a file at the law

2   department.  If you were asked to produce either those

3   documents or a subset of them, how challenging or difficult

4   would that be?

5           MR. ZIMMERMAN:  I don't think it will be particularly

6   challenging or difficult, your Honor, and in fact we were

7   already in the process of seeing how many of them would be

8   relevant to the initial disclosures.  The only thing I can't

9   say, because I have not yet reviewed the file, is whether there

10  is any confidentiality agreements or protective orders in

11  place, if any of the documents were served or produced under

12  confidentiality.  That will have to be worked out.  But, yes,

13  absolutely our first places we are going to look is the Aziz

14  file and whatever is in there we will produce or at least

15  identify.

16          THE COURT:  That is helpful.

17          Ms. Marryshow?

18          MS. MARRYSHOW:  I also don't think it would be

19  particularly difficult to turn over the Green-Johnson file

20  wholesale but I think our concern is only relevance because

21  this case is just very different from the other case and the

22  claims are different.  So, the proper course would be to review

23  those documents to determine whether they're actually relevant

24  to this action, and we would also of course need a protective

25  order on that, as all those documents have been produced

P1S5shaC

1  pursuant to the protective order in the Aziz Green-Johnson

2  case.

3          THE COURT:  All of the documents?

4          MS. MARRYSHOW:  If not all, then most I would say,

5  because they're internal files.

6          THE COURT:  So unclear whether or not there are any

7  documents that were produced in the green Johnson litigation

8  that are not subject to the protective order.

9          MS. MARRYSHOW:  I do not believe that the government

10  has produced documents that are not subject to protective order

11  so let me be clear about that.

12          THE COURT:  OK.

13          MS. MARRYSHOW:  I do not necessarily think all of

14  plaintiff's documents in that case are subject to the

15  protective order but, as you know, in that case they're calling

16  for internal FBI files so they are confidential.

17          THE COURT:  Right.  And leaving aside the issue of the

18  protective order, what I think I heard you say was that if you

19  got a request, say, from the plaintiffs here to get the

20  universe of documents that were produced in the other

21  litigation that you would not be able to just produce that --

22  leaving aside the issue of a protective order.

23          MS. MARRYSHOW:  Right.

24          THE COURT:  That there would be some kind of internal

25  relevance review that you would be doing before turning any of

P1S5shaC

1    those documents over.

2            MS. MARRYSHOW:  That would be correct, your Honor,

3    just given the nature of the cases being different.

4            THE COURT:  OK.  I think I understand.

5            When do you anticipate filing your motion to dismiss?

6            MS. MARRYSHOW:  So we likely will need an extension on

7    the motion to dismiss.  We obviously haven't asked your Honor

8    for that but that is why I raised the individuals earlier so

9    I'm not sure how your Honor would like to proceed.  It seems to

10   us to be more efficiently to figure out who we are representing

11   first and file one motion to dismiss on behalf of all of our

12   clients but of course it would be what would be most helpful to

13   your Honor.  I do think it is a little unclear right now who we

14   are going to be representing in this action.  Obviously people

15   will request -- it is free DOJ representation and we will go

16   through that process but I'm not sure when plaintiffs think

17   that they can get service complete, if you see what I am

18   saying.

19           THE COURT:  I think so.

20           Maybe I should come back to Ms. Shaer.  You mentioned

21   that you are likely to be seeking extension of time to

22   effectuate service on the individual defendants, and again

23   without prejudice because you haven't put the request before me

24   and maybe you want to think about it a little bit, but do you

25   have a sense at this point for how much more time you think you

P1S5shaC

1    will want?  Again, it is not final, I just want to get a sense

2    for what the parties are all anticipating.

3          MS. DROUBI:  Your Honor, I will speak to this quickly.

4    We have only be been able to verify 15 addresses, we have

5    spoken to private investigators, a lot of work is going into

6    it, it is hard to know exactly how much time will require for

7    the remaining 25 that are missing.  We are actively in the

8    process of trying to serve 15.  So I think a month or two at

9    least to check in to see how far we have been able to get would

10   be helpful and then it might be that we need to seek

11   alternative service if we are able to find another method of

12   serving individuals.

13          THE COURT:  Ms. Shaer?

14          MS. SHAER:  Yes, if I also may add to that.  I think

15   that is another reason why we wouldn't support delaying

16   discovery for a motion to dismiss or for the finalization of

17   the service.  Again, I think we have identified, preliminarily,

18   some documents that would be really great to have shared.  In

19   addition to the documents that the defendants provided to

20   related counsel, we would also emphasize the e-documents

21   provided to the DA provided for their investigation as well

22   which we understand not all of those documents were provided to

23   the plaintiff's counsel in the related case.

24          THE COURT:  What view, if any, do you have on the

25   City's proposal for some sort of mediated exchange of documents

P1S5shaC

1    with the City?

2            MS. SHAER:  I think while generally we are amenable we

3    had some preliminary discussions on that, we would still like

4    some sense of deadlines to be included in those types of

5    requests and those conversations.  But, we are very happy to

6    have that open dialogue with the City but would ask for some

7    sense of deadlines to be included.

8            THE COURT:  I think the United States has a fair point

9    that they need to know who they're representing before filing a

10   motion.  In this kind of unusual posture where some of the

11   individual defendants haven't been identified yet and service

12   on them hasn't been effectuated yet, I am not sure it makes

13   sense to fire the starting pistol, so to speak, on the race.

14   But, given that the City is open to some discovery taking

15   place, it is still a little unclear to me what that looks like

16   and what that process is like.  It sounds like you have only

17   had some preliminary conversations, you haven't really kind of

18   sat down to hammer out the fine details of what that might look

19   like.  I wonder if perhaps I should give more time to do that

20   before we give you something else.

21           Go ahead.

22           MS. SHAER:  I would also say in terms of the federal

23   government, all of the documents that we understand we would be

24   asking for would be in the U.S.A.'s possession and already

25   something that they have, so I think that is kind of our main

P1S5shaC

1    thought on that.  I'm not sure that the U.S.A. intends to

2    dismiss all of the claims so I think that also leans towards

3    maybe providing at least these preliminary documents.

4              THE COURT:  But as to the City?  It sounds to me like

5    you haven't really kind of progressed past a sort of just

6    initial conceptual conversation and that you haven't sort of

7    compared concrete proposals for what -- they're sort of not

8    full discovery but some exchange of documents proposal might

9    look like.

10             MS. SHAER:  We have not gone into the details or the

11   nitty-gritty of it.

12             THE COURT:  OK.  Maybe I can come back to

13   Ms. Marryshow for just a second.  I understood you to be saying

14   that the United States was going to move to dismiss all claims.

15             MS. MARRYSHOW:  That's correct, your Honor.

16             THE COURT:  OK.  I just wanted to confirm that that

17   assumption of mine was correct.

18             So I thought, and again tell me if I have this wrong,

19   that the deadline for plaintiffs to serve the individual

20   defendants was March 15th.  Do I not have that right?  Does

21   anyone think that the date is something different?

22             MS. DROUBI:  Apologies, your Honor.  I thought we

23   believe it is mid-February.  We intend, if so -- we might be

24   incorrect about that, though.

25             THE COURT:  I apologize that I don't have that.  I

P1S5shaC

1    just have my notes in front of me, I don't have the actual

2    calculation.

3            Mr. Oestericher.

4            MR. OESTERICHER:  I am going to speculate a little bit

5    but the complaint is dated November 15, filed on the 15th, 120

6    days would be March, but.

7            THE COURT:  That is maybe the basis for my notes.

8            So, plaintiffs, you think you are going to need more

9    time, maybe a month or two more than that.  Do you have a sense

10   for when you are going to know what that is and when you are

11   going to request it?

12           MS. DROUBI:  Very soon, your Honor.  I think we wanted

13   to see how 15 individuals' service goes and whether we can make

14   some progress on the remaining defendants and then submit a

15   motion to the Court with more specificity as to how long, but I

16   think about 30 more days, a month or two months maximum, seems

17   reasonable to us.

18           THE COURT:  OK, but when do you think you might know

19   the answer for how much time you need?

20           MS. DROUBI:  I think within a month we should be able

21   to have an answer as to how much more time we need.

22           THE COURT:  OK.  It is kind of an unusual posture but

23   here is how I am going to ask you all to proceed.  Let me make

24   sure the 28th of February falls on a weekday -- apologies -- it

25   does, that is a Friday, so maybe by the 28th of February

P1S5shaC

```
1   plaintiffs can file your motion to extend the period, the
2   deadline for service on the individual defendants.  I will ask
3   you also to submit a status letter that lays out what,
4   hopefully agreement you and the City have come to with respect
5   to maybe some early discovery.  If you can't come to an
6   agreement then the particulars of your competing proposals
7   would be helpful so we are not just talking about it at the
8   kind of conceptual stage.  I'm not going to order the case
9   management plan today, I want to give you time to work on
10  service and then work with the City.  Hopefully that can, even
11  if discovery isn't open, you will at least start some of the
12  wheels turning and maybe you can get some, you know, of the
13  documents that they're looking for, and then based on what I
14  have just ruled, it sounds like the deadline for the United
15  States to move or answer is, right now, early February; is that
16  right?
17          MS. MARRYSHOW:  That's correct, your Honor.
18          THE COURT:  So I assume you are going to want more
19  time because what you told me was that you want to know who you
20  are representing first.
21          MS. MARRYSHOW:  Correct, your Honor.
22          THE COURT:  So, I will adjourn your deadline to move
23  or answer the complaint sine die.  Let's see what comes on
24  February 28 and then, within a week of that, confer with each
25  other and try to give me a proposal for briefing deadlines on
```

P1S5shaC

1    the United States' motion to dismiss.

2              Does that make sense?

3              MS. MARRYSHOW:  It does, your Honor.

4              THE COURT:  We could try to set those deadlines now

5    but I am not sure that that would make sense.

6              MS. MARRYSHOW:  I think this makes more sense, your

7    Honor.  We will have to figure out who they have served and

8    then those people will have to go through our process for

9    representation for us to have certainty about who we are

10   representing and who we are not, but at least a week after

11   February 28 at least we would be able to give you some sense of

12   where we are on that.

13             THE COURT:  Does that make sense -- I'm sorry,

14   Mr. Zimmerman?

15             MR. ZIMMERMAN:  I was going to add on, your Honor, if

16   we are going to be setting deadlines, I would request that the

17   City's deadline to answer also be extended to February 28, just

18   because I have a couple other things on my plate that I don't

19   want to rough through this answer, and since it is not going to

20   delay anything, we are going to answer and not move, so I don't

21   think it makes a big difference if we answer now or in three

22   weeks.

23             THE COURT:  Ms. Shaer or Ms. Droubi, would either of

24   you like to speak to that?

25             MS. SHAER:  No objection.

P1S5shaC

1        THE COURT:  To the City's getting an extension to

2   answer to the 28th of February?

3        MS. SHAER:  Yes.  And I wanted clarification on what

4   the USA would be doing one week after the February 28 deadline.

5   It was that they were going to provide us information regarding

6   the individuals?

7        THE COURT:  I think what I was suggesting was that by

8   March 7, that once we all know where the plaintiffs are with

9   respect to service and how much more time you are going to

10  need, confer the following week and submit a joint letter that

11  sets a briefing schedule for the United States motion to

12  dismiss.  We could try to hammer that schedule out amongst us

13  all right now but given that -- I just don't know that it makes

14  sense.  I think the United States is going to want to know

15  where we are with service and who they might be representing in

16  their motion, so we could set a date now on the assumption that

17  you are going to complete service sometime after February 28

18  but it probably just makes more sense to wait right now, unless

19  you have a different view.

20       MS. SHAER:  No, I think that is perfectly fine for us,

21  to wait until March 7, and we will rediscuss.

22       THE COURT:  Yes.  You will confer with each other

23  prior to the 7th and submit a joint status letter on the 7th

24  that has a proposed briefing schedule.  Hopefully you can come

25  to alignment on that but if you can't, just set forth your

P1S5shaC

1    respective proposals with specific dates and then I will so

2    order it.  But, assuming you can agree, then as long as what

3    you propose to me is reasonable, I am sure I will so order when

4    you propose it.

5            Is there anything else that the parties would like to

6    raise with me today?  I see you standing, Mr. Zimmerman, so I

7    will start with you.

8            MR. ZIMMERMAN:  I am thinking through the individual

9    defendants a little bit, and again, this is not my area of law,

10   but I am foreseeing there are going to be problems if you are

11   serving somebody who is not capable of accepting service for

12   the entity being sued but then that person would have to

13   request representation from government agencies that never had

14   an obligation to represent them.  Like what I am thinking, for

15   instance, is you have a police officer who passed away, and his

16   estate has been probated and closed and now they're serving the

17   executor.  Right?  That executor may not -- I don't know if you

18   can serve on an executor of a closed estate like that.  The

19   executor would then ask the law department for representation

20   in their personal capacity which we wouldn't provide.  I am

21   just raising with your Honor that there are going to be some

22   murky surface issues that I think all of us will have to work

23   through.

24           THE COURT:  I appreciate the flag.  Is there anything

25   that you think that we should be doing in terms of setting the

P1S5shaC

```
 1   deadlines that I just set or other deadlines given those

 2   difficulties?

 3           MR. ZIMMERMAN:  I mean I guess, and I don't want to

 4   put any burden on the plaintiffs but I would like some

 5   indication from the plaintiffs, who have obviously researched

 6   this, why they think they can sue the executor of the estate of

 7   somebody who died many years ago, where they think they can

 8   assert a claim on a long-closed estate and why that service is

 9   effective.

10           THE COURT:  Ms. Droubi, I see you standing so I'm

11   not -- there is no request for relief from the City on this but

12   Mr. Zimmerman raises questions, maybe I could ask it.

13           MS. DROUBI:  Much like the estate of Malcolm X had to

14   be opened because there is now an asset that needs to be

15   litigated, similarly we argue that even a closed probate or

16   estate in which a tort had occurred during the course of that

17   individual's lifetime, that there would still be liability in

18   their core service of the estate.  I think if we need to

19   litigate this, but hopefully we will be able to work with the

20   City and provide the necessary case law to support our argument

21   that there is still a basis to serve the individuals.

22           THE COURT:  OK.  Well, we still don't know who a lot

23   of these individuals are and you haven't attempted to

24   effectuate service so I guess we will cross this bridge when it

25   comes to it.  Mr. Zimmerman, I appreciate you pointing it out.
```

P1S5shaC

1          Is there anything else you would like to raise with me

2     today?  I will start with Ms. Shaer.

3          MS. SHAER:  No, your Honor.

4          THE COURT:  Thank you.

5          Mr. Zimmerman?

6          MR. ZIMMERMAN:  No thank you, your Honor.

7          THE COURT:  Ms. Marryshow?

8          MS. MARRYSHOW:  Nothing from the government, your

9     Honor.

10         THE COURT:  Thank you very much.  We are adjourned.

11                              o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25