`UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ILYASAH SHABAZZ, as Administrator of THE
ESTATE OF MALIK EL-SHABAZZ, also known as
Malcolm X, and, in their individual capacities,
ILYASAH SHABAZZ, GAMILAH-LAMUMBA
SHABAZZ, MALAAK SHABAZZ,

          Plaintiffs,

     v.


THE UNITED STATES OF AMERICA, The Estate
of CLYDE ANDERSON TOLSON, on behalf of J.
EDGAR HOOVER and The Estate of WILLIAM C.
SULLIVAN, The Estate of GEORGE C. MOORE,
The Estate of RICHARD MCGARRAH HELMS,
ARTHUR FULTON, The Estate of DALE SUTTON,
The Estate of AUGUST MICEK, STEVEN
EDWARDS, JOHN ALI SIMMONS, RONALD
TIMBERLAKE, ABDUL BASIT NAEEM, THE
CITY OF NEW YORK, a Municipal Corporation,
The Estate of VINCENT LYONS BRODERICK, The
Estate of HOWARD R. LEARY, The Estate of
FERDINAND CAVALLARO, The Estate of
FRANCIS CILENTO, The Estate of WILLIAM E.
CONFREY, The Estate of JOHN J. CONROY, The
Estate of THOMAS T. CUSMANO, The Estate of
WINSTON W. DE VERGEE, The Estate of
SANFORD GARELIK, JOSEPH IACOVELLI, The
Estate of JOHN J. KEELEY, The Estate of THOMAS
C. RENAGHAN, The Estate of FRANCIS J.M.
ROBB, The Estate of JAMES RUSHIN, The Estate of
HOWARD G. SCHAETZLE, FRANCIS M.
SULLIVAN, WARRANT TAYLOR, The Estate of
PATRICK J. TWOMEY, ERNEST VOHS,
MICHAEL WILLIS, The Estate of ANTHONY
("TONY") BOUZA, The Estate of GERRY

No. 24 Civ. 8680 (DEH)

FULCHER, WILLIAM ("BILL") KNAPP, The Estate
of BERNARD ("BARNEY") F. MULLIGAN, The
Estate of EUGENE ("GENE") A. ROBERTS,
HENRY SUAREZ, The Estate of THEODORE
("TED") THEOLOGES, The Estate of RAYMOND
A. WOOD, The Estate of ANYTHONY ("TONY")
ULASEWICZ, and DOES 1 through 50, Inclusive,

                Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF THE FEDERAL DEFENDANTS'
MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE
12(B)(1), 12(B)(2), AND 12(B)(6)**


                              JAY CLAYTON
                              United States Attorney for the
                              Southern District of New York
                              *Counsel for the Federal Defendants*
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007


DANIELLE J. MARRYSHOW
ILAN STEIN
JEFFREY OESTREICHER
Assistant United States Attorneys
        – Of Counsel –

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

   A.  Factual Background .................................................................................................. 2

   B.  Procedural Background ............................................................................................. 5

LEGAL STANDARD .............................................................................................................. 5

ARGUMENT .......................................................................................................................... 7

   I.   PLAINTIFFS' CLAIMS ARE TIME-BARRED ........................................................... 7

    A.  Plaintiffs Were Aware of the "Critical Facts" Concerning Their Injury No Later than 2020 .......................................................................................................................... 8

    B.  Plaintiffs' Claims Were Not *Heck*-Barred Prior to the Vacatur of Aziz and Islam's Convictions ........................................................................................................... 11

    C.  The Continuing Violation Doctrine Cannot Render Plaintiffs' Claims Timely ............. 13

    D.  Plaintiffs Are Not Entitled to Equitable Tolling Based On Any Alleged "Fraudulent Concealment" ...................................................................................................... 14

   II.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' TORT CLAIMS BECAUSE PLAINTIFFS FAILED TO SATISFY THE FTCA'S PRESENTMENT REQUIREMENT ...................................................................... 15

   III. PLAINTIFFS' NEGLIGENCE CLAIMS FAIL UNDER RULE 12(B)(1) AND RULE 12(B)(6) ...................................................................................................................... 20

    A.  Plaintiffs Fail to State Any Negligence Claims Because the FBI's Alleged Misconduct Was Intentional, Not Negligent ........................................................................... 20

    B.  No Private Analogue Exists Under New York Law for Negligence Under Similar Circumstances ..................................................................................................... 22

    C.  Plaintiffs Fail to State a Claim for Negligent Hiring, Retention, and Supervision ........ 23

   IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ........................................................................................ 24

i

V.  PLAINTIFFS FAIL TO STATE CLAIMS FOR THEIR OTHER ALLEGED TORTS.. 26

   A.  Fraudulent Concealment ................................................................................ 26

   B.  Failure to Warn and Failure to Protect.......................................................... 27

   C.  Right to Privacy ............................................................................................. 28

   D.  Wrongful Death, Conscious Pain and Suffering, and Conspiracy................. 29

VI. PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL FEDERAL DEFENDANTS
     FOR CONSPIRACY UNDER SECTIONS 1983, 1985, 1986 FAIL AS A MATTER
     OF LAW ................................................................................................................ 30

   A.  Plaintiffs' Claims Are Time-Barred............................................................... 30

   B.  Plaintiffs Have Failed to Establish That the Court Has Personal Jurisdiction Over the
       Estates ............................................................................................................ 30

   C.  Plaintiffs Fail to State a Claim for Relief....................................................... 31

CONCLUSION................................................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.Q.C. ex rel. Castillo v. United States,*
    656 F.3d 135 (2d Cir. 2011)....................................................................... 7, 11, 14

*Arar v. Ashcroft,*
    585 F.3d 559 (2d Cir. 2009)....................................................................... 31

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................... 2, 6

*Aurrecchione v. Falco,*
    No. 22 Civ. 4538 (NSR), 2023 WL 6255529 (S.D.N.Y. Sept. 25, 2023)................... 24

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................... 6, 7

*Ben v. United States,*
    160 F. Supp. 3d 460 (N.D.N.Y. 2016) ........................................................ 22, 23

*Brewton v. City of New York,*
    550 F. Supp. 2d 355 (E.D.N.Y. 2008) ........................................................ 24

*Brown v. City of New York,*
    73 A.D.3d 1113 (2d Dep't 2010) ................................................................ 26, 27, 28

*Celestine v. Mt. Vernon Neighborhood Health,*
    403 F.3d 76 (2d Cir. 2005)......................................................................... 15

*Cerbone v. Int'l Ladies' Garment Workers' Union,*
    768 F.2d 45 (2d Cir. 1985)......................................................................... 14

*Chanko v. Am. Broad. Companies Inc.,*
    27 N.Y.3d 46 (2016) .................................................................................. 25

*Collins v. United States,*
    996 F.3d 102 (2d Cir. 2021)....................................................................... 16, 17

*Cooke v. United States,*
    918 F.3d 77 (2d Cir. 2019)......................................................................... 15

*Cox v. Perfect Bldg. Maint. Corp.,*
    No. 16 Civ. 7474 (VEC), 2017 WL 3049547 (S.D.N.Y. July 18, 2017)................... 11

iii

*Cruz v. City of New Rochelle*,
  No. 13 Civ. 1342 (LMS), 2017 WL 1402122 (S.D.N.Y. Apr. 3, 2017) .................................. 29

*David v. Weinstein Co., LLP*,
  431 F. Supp. 3d 290 (S.D.N.Y. 2019) ....................................................................... 22

*De Sole v. Knoedler Gallery, LLC*,
  137 F. Supp. 3d 387 (S.D.N.Y. 2015) ....................................................................... 26

*Dep't of Army v. Blue Fox, Inc.*,
  525 U.S. 255 (1999) ............................................................................................. 15

*Doe v. Guthrie Clinic, Ltd.*,
  22 N.Y.3d 480 (2014) ........................................................................................... 23

*Donahue v. United States*,
  634 F.3d 615 (1st Cir. 2011) .................................................................................... 8

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013) ................................................................................. 2, 6

*Dotson v. Griesa*,
  398 F.3d 156 (2d Cir. 2005) .................................................................................. 31

*EEOC v. Die Fliedermaus, L.L.C.*,
  77 F. Supp. 2d 460 (S.D.N.Y. 1999) ....................................................................... 24

*Ferring B.V. v. Allergan, Inc.*,
  932 F. Supp. 2d 493 (S.D.N.Y. 2013) ..................................................................... 26

*Fiedler v. Incandela*,
  222 F. Supp. 3d 141 (E.D.N.Y. 2016) ..................................................................... 21

*Forbes v. City of Rochester*,
  612 F. Supp. 3d 159 (W.D.N.Y. 2020) ..................................................................... 21

*Frederique v. Cty. of Nassau*,
  168 F. Supp. 3d 455 (E.D.N.Y. 2016) ..................................................................... 21

*Freeman v. Rochester Psychiatric Ctr.*,
  No. 12 Civ. 6045 (MAT), 2017 WL 4169336 (W.D.N.Y. Sept. 20, 2017) .................. 11, 12

*Giammatteo v. Newton*,
  452 F. App'x. 24 (2d Cir. 2011) ............................................................................... 6

*Gilvar v. United States*,
    No. 09 Civ. 8941 (LTS), 2011 WL 2161866 (S.D.N.Y. May 26, 2011) ................................... 8

*Goel v. Dep't of Justice*,
    No. 03 Civ. 579 (HB), 2003 WL 22047877 (S.D.N.Y. Aug. 29, 2003) ........................... 28, 29

*Gonzales v. Nat'l Westminster Bank, Plc*,
    No. 11 Civ. 1435 (LAP), 2013 WL 6978874 (S.D.N.Y. Nov. 18, 2013) ............................... 14

*Grynberg v. Eni S.p.A.*,
    No. 06 Civ. 6495 (RLC), 2007 WL 2584727 (S.D.N.Y. Sept. 5, 2007) ................................ 14

*Guzman v. United States Postal Service*,
    No. 21 Civ. 4415 (LAK) (RWL), 2022 WL 17169529 (S.D.N.Y. Nov. 17, 2022) ................ 18

*Hayward v. Cleveland Clinic Foundation*,
    759 F.3d 601 (6th Cir. 2014) ............................................................................................... 13

*Heck v. Humphrey*,
    512 U.S. 477 (1994) .............................................................................................................. 12

*Henry v. Bank of Am.*,
    48 N.Y.S.3d 67 (1st Dep't 2017) ......................................................................................... 13

*Hincapie v. City of New York*,
    No. 18 Civ. 3432 (PAC), 2022 WL 2870411 (S.D.N.Y. July 21, 2022) ................................ 12

*Hogan v. Fischer*,
    738 F.3d 509 (2d Cir. 2013) ................................................................................................... 7

*Howell v. New York Post Co.*,
    81 N.Y.2d 115 (1993) ..................................................................................................... 24, 28

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013) ................................................................................................... 6

*Jaghory v. N.Y. State Dep't of Educ.*,
    131 F.3d 326 (2d Cir. 1997) ................................................................................................... 7

*Johnson v. United States*,
    759 F. Supp. 3d 425 (S.D.N.Y. 2024) ..................................................................... 12, 22, 25

*Johnson v. United States*,
    788 F.2d 845 (2d Cir. 1986) ........................................................................................... 16, 19

*Kingsley v. Bureau of Prisons*,
   937 F.2d 26 (2d Cir. 1991)....................................................................................... 31

*Kovkov v. Law Firm of Dayrel Sewell, PLLC*,
   182 A.D.3d 418 (1st Dep't 2020) ............................................................................. 29

*Kronisch v. United States*,
   150 F.3d 112 (2d Cir. 1998)........................................................................................ 8

*Lamb v. Baker*,
   152 A.D.3d 1230 (4th Dep't 2017) ........................................................................... 23

*Lassic v. United States*,
   No. 14 Civ. 9959 (KBF), 2015 WL 5472946 (S.D.N.Y. Sept. 16, 2015)........................ 19, 23

*Lee v. Springer Nature Am., Inc.*,
   769 F. Supp. 3d 234 (S.D.N.Y. 2025)....................................................................... 10

*Lee v. U.S. Dep't of Army*,
   No. 11 Civ. 331 (RRM) (CLP), 2013 WL 4048329 (E.D.N.Y. Aug. 9, 2013) ................. 16, 18

*Long Island Radio Co. v. NLRB*,
   841 F.2d 474 (2d Cir. 1988)........................................................................................ 6

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)..................................................................................... 5, 6

*Margrabe v. Sexter & Warmflash, P.C.*,
   No. 07 Civ. 2798 (KMK) (GAY), 2009 WL 361830 (S.D.N.Y. Feb. 11, 2009)..................... 13

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*,
   682 N.Y.S.2d 167 (1st Dep't 1998) ........................................................................... 24

*McNeil v. United States*,
   508 U.S. 106 (1993).................................................................................................. 15

*Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*,
   7 F.3d 1085 (2d Cir. 1993)........................................................................................ 34

*Mines-Jones v. Spiegel Brands, Inc.*,
   No. 19 Civ. 1024 (LDH) (LB), 2019 WL 13472339 (E.D.N.Y. Apr. 16, 2019) ..................... 11

*Ortiz v. City of New York*,
   No. 15 Civ. 2206 (DLC), 2016 WL 7009059 (S.D.N.Y. Nov. 30, 2016)................................ 21

*Panos v. Universal Forest Prods., Inc.*,
   No. 18 Civ. 2066 (KMK), 2020 WL 416445 (S.D.N.Y. Jan. 27, 2020)................................. 13

*Pearl v. City of Long Beach*,
   296 F.3d 76 (2d Cir. 2002)................................................................................................ 7, 8

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010)..................................................................................................... 6

*Porrazzo v. Bumble Bee Foods, LLC*,
   822 F. Supp. 2d 406 (S.D.N.Y. 2011)..................................................................................... 9

*Ramiro Aviles v. S&P Glob., Inc.*,
   380 F. Supp. 3d 221 (S.D.N.Y. 2019).................................................................................. 13

*Romulus v. United States*,
   160 F.3d 131 (2d Cir. 1998)........................................................................................... 16, 18

*Romulus v. United States*,
   983 F. Supp. 336 (E.D.N.Y. 1997) ...................................................................................... 18

*Saint-Jean v. Emigrant Mortgage Co.*,
   129 F.4th 124 (2d Cir. 2025) ............................................................................................... 14

*Salamone v. United States*,
   618 F. Supp. 3d 146 (S.D.N.Y. 2022).................................................................................. 23

*Schwartz v. United States*,
   No. 19 Civ. 7846 (VSB), 2020 WL 5578505 (S.D.N.Y. Sept. 17, 2020)............................ 19

*Seippel v. Jenkens & Gilchrist, P.C.*,
   341 F. Supp. 2d 363 (S.D.N.Y. 2004)................................................................................. 14

*Selkirk v. State*,
   671 N.Y.S.2d 824 (3d Dep't 1998)...................................................................................... 13

*Sommer v. Dixon*,
   709 F.2d 173 (2d Cir. 1983)................................................................................................ 34

*Spencer v. Green*,
   842 N.Y.S.2d 445 (2d Dep't 2007)...................................................................................... 26

*Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*,
   665 N.Y.S.2d 415 (1st Dep't 1997)...................................................................................... 26

*Stuto v. Fleishman*,
   164 F.3d 820 (2d Cir. 1999) ................................................................. 25

*Sulaiman v. Laram*,
   No. 16 Civ. 8182 (CM), 2017 WL 11659746 (S.D.N.Y. Apr. 4, 2017) ................................. 13

*Tangreti v. Bachmann*,
   983 F.3d 609 (2d Cir. 2020) ................................................................. 31

*Thomas v. Roach*,
   165 F.3d 137 (2d Cir. 1999) ................................................................. 34

*Traggis v. St. Barbara's Greek Orthodox Church*,
   851 F.2d 584 (2d Cir. 1988) ................................................................. 34

*Turley v. ISG Lackawanna, Inc.*,
   774 F.3d 140 (2d Cir. 2014) ................................................................. 24

*United Bhd. Of Carpenters & Joiners v. Scott*,
   463 U.S. 825 (1983) ................................................................. 34

*United Nat'l Ins. Co. v. Tunnel, Inc.*,
   988 F.2d 351 (2d Cir. 1993) ................................................................. 21

*United States v. Kwai Fun Wong*,
   575 U.S. 402 (2015) ................................................................. 7

*United States v. Sherwood*,
   312 U.S. 584 (1941) ................................................................. 6

*Veltri v. Building Serv. 32B-J Pension Fund*,
   393 F.3d 318 (2d Cir. 2004) ................................................................. 14, 15

*Waller v. Smith*,
   403 F. Supp. 3d 164 (W.D.N.Y. 2019) ................................................................. 12

*Washington Cap. Ventures, LLC v. Dynamicsoft, Inc.*,
   373 F. Supp. 2d 360 (S.D.N.Y. 2005) ................................................................. 26

*Water Energizers, Ltd. V. Water Energizers, Inc.*,
   788 F. Supp. 208 (S.D.N.Y. 1992) ................................................................. 30

*Watson v. United States*,
   865 F.3d 123 (2d Cir. 2017) ................................................................. 22

*Webb v. Goord*,
    340 F.3d 105 (2d Cir. 2003)................................................................................... 34

*Weiner v. Miller*,
    No. 22 Civ. 7081 (GRB) (ARL), 2023 WL 6385816 (E.D.N.Y. Sept. 29, 2023) ................... 29

*Williams v. Reilly*,
    743 F. Supp. 168 (S.D.N.Y. 1990)........................................................................ 34

*Wilmington Tr. v. Estate of McClendon*,
    287 F. Supp. 3d 353 (S.D.N.Y. 2018)................................................................... 30

*Woods v. Maytag Co.*,
    807 F. Supp. 2d 112 (E.D.N.Y. 2011) ................................................................. 26

*Wright v. Belafonte*,
    No. 12 Civ. 7580 (GBD) (RLE), 2014 WL 13111397 (S.D.N.Y. Mar. 11, 2014) ................. 28

*Young v. U.S.*,
    No. 12 Civ. 2342 (ARR) (SG), 2014 WL 1153911 (E.D.N.Y. Mar. 20, 2014)...................... 19

**Statutes**

28 U.S.C. § 1346(b) ......................................................................................... 15, 22, 23, 28

28 U.S.C. § 2401(b) ..................................................................................................... 7

28 U.S.C. § 2675(a) .................................................................................................... 15

42 U.S.C. § 1983.............................................................................................. 2, 5, 7, 31

42 U.S.C. § 1985.................................................................................................... 7, 34

42 U.S.C. § 1986.................................................................................................... 7, 34

**Regulations**

28 C.F.R. § 14.4 ........................................................................................................ 16

Defendants the United States of America (the "Government"), the Estate of William C. Sullivan, the Estate of George C. Moore, Arthur Fulton, the Estate of Dale Sutton, and the Estate of August Micek (the "Individual Federal Defendants,"[1] and together with the Government, the "Federal Defendants") by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum in support of their motion to dismiss the Complaint (ECF No. 12 ("Compl.")) filed by Plaintiffs Ilyasah Shabazz, as Administrator of The Estate of Malik El-Shabazz, also known as Malcolm X, and, in their individual capacities, Ilyasah Shabazz, Gamilah-Lamumbah Shabazz, Malaak Shabazz's (together, "Plaintiffs") pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs seek to hold the Government liable in this action for alleged injuries arising from the assassination of Malcolm X, which occurred more than 60 years ago. Plaintiffs, who advance claims individually and on behalf of Malcolm X's estate, allege that the FBI and various of its employees (1) knew about threats to Malcolm X's life prior to his assassination but failed to protect him from harm; (2) coordinated with the New York Police Department ("NYPD") to leave Malcolm X more vulnerable, including by removing law enforcement officers from the ballroom where Malcolm X was assassinated and arresting Malcolm X's security detail days before the assassination; (3) arranged to have undercover FBI agents present during the assassination but failed to protect Malcolm X from attack; and (4) otherwise encouraged Malcolm X's assassination. Plaintiffs advance various causes of action against the Federal Defendants. Pursuant to the Federal

---

[1] There are additional individual defendants who are former federal employees but who not currently being represented by counsel for the Government, including the Estate of Clyde Anderson Tolson on behalf of J. Edgar Hoover, the Estate of Richard McGarrah Helms, and Steven Edwards. The arguments advanced in this memorandum of law on behalf of the Individual Federal Defendants apply with equal force to those other defendants.

Tort Claims Act, they assert numerous tort claims against the Government, including fraudulent concealment; negligence; negligence per se; gross negligence; negligent hiring, retention, and supervision; wrongful death; failure to warn; failure to protect; intentional infliction of emotional distress ("IIED"); right to privacy; conspiracy; and conscious pain and suffering. They also bring conspiracy claims against the Individual Federal Defendants under 42 U.S.C. §§ 1983, 1985, and 1986.

Plaintiffs' claims fail for several independent reasons. As a threshold matter, Plaintiffs' claims are time-barred. Their claims accrued sixty years ago, and Plaintiffs were (or should have been) aware of the critical facts concerning their injuries long before they filed their claims. In addition, Plaintiffs' tort claims against the United States fail because (1) Plaintiffs did not provide the Government with adequate notice of their claims at the administrative level, stripping this Court of jurisdiction over those claims, and (2) Plaintiffs have not adequately alleged the elements of the various torts they pursue in this action. Plaintiffs' conspiracy claims under sections 1983, 1985, and 1986 against the Individual Federal Defendants fail because (1) Plaintiffs have not made a *prima facie* showing that the Court has personal jurisdiction over the Estates, and (2) Plaintiffs have not stated valid claims for relief.

For these reasons, the Court should dismiss the Plaintiffs' complaint in its entirety.

## BACKGROUND

### A. Factual Background[2]

Plaintiffs are Malcolm X's daughters, one of whom brings suit in both her individual capacity and as the purported Administrator of the Estate of Malcolm X. Compl. ¶¶ 33-34. They

---

[2] The Federal Defendants do not concede the veracity of any of the allegations in the complaint but recognize that, for purposes of resolving the motion to dismiss under Rules 12(b)(2) and

allege that over sixty years ago, the FBI and its leaders targeted Malcolm X and other African-American leaders through a program known as the Counterintelligence Program ("COINTELPRO"). *Id.* ¶¶ 105-119. Plaintiffs further assert that, beginning in April 1964, then-FBI Director J. Edgar Hoover recommended that the FBI surveil Malcolm X's residence. *Id.* ¶ 142. The FBI allegedly sowed dissent between the Nation of Islam ("NOI") and Malcolm X, *id.* ¶ 146, which precipitated various attempts to kill Malcolm X, *id.* ¶¶ 148-165. The FBI and NYPD allegedly learned of at least some of those threats to Malcolm X's life. *See, e.g.*, *id.* ¶¶ 163-172. On July 3, 1964, Malcolm X called the NYPD to report that "two Black Muslims were waiting at his home to harm him." *Id.* ¶ 163. On July 7, 1964, the Special Agent in Charge of the FBI's New York office sent a memorandum to then-Director Hoover stating that a NOI member had been ordered to kill Malcolm X. *Id.* ¶ 165. That same day, Malcolm X contacted the NYPD to advise them that an attempt had been made on his life that day. *Id.* ¶ 172. He told the NYPD that "he was at high risk of assassination." *Id.* Several days before that, "the FBI was already aware of a plot on Malcolm X's life in Chicago." *Id.* Nonetheless, according to Plaintiffs, the Federal Defendants "did nothing to prevent the assassination" of Malcolm X; "instead, they continued to encourage it." *Id.* ¶ 177. Plaintiffs allege that on February 9, 1965, Malcolm X traveled to France but was refused entry, which Plaintiffs assert was on account of France's fear that the CIA would murder Malcolm X on its soil. *Id.* ¶¶ 178-79.

Plaintiffs further allege that, on February 14, 1965, Malcolm X's home was firebombed in the middle of the night. *Id.* ¶ 180. According to Plaintiffs, on February 16, 1965, the NYPD arrested two of Malcolm X's bodyguards for allegedly plotting to blow up the Statute of Liberty.

---

12(b)(6), the Court must consider the well-pleaded allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

*Id.* ¶ 182. Plaintiffs allege that the bodyguards' arrests "were coordinated by the BOSSI defendants and the Federal Defendants to weaken Malcolm X's security, which knowingly facilitated his assassination." *Id.* ¶ 183. Plaintiffs contend that, in the week leading up to Malcolm X's assassination on February 21, 1965, the NYPD falsely claimed that previous attempts on his life were publicity stunts, all while Malcolm X faced new threats to his safety in the days before his assassination. *Id.* ¶¶ 187-89, 209. In the days before his assassination, Malcolm X complained that the NYPD would not respond to his requests for protection. *Id.* ¶ 210. Plaintiffs allege that, "[i]nstead of ensuring Malcolm X's protection, the FBI and BOSSI Defendants actively worked to ensure Malcolm X's vulnerability by reducing his hired protection." *Id.* ¶ 212. They further assert that the defendants "affirmatively encouraged, coordinated, and provided the circumstances for the successful assassination of Malcolm X." *Id.* ¶ 216.

On February 21, 1965, Malcolm X appeared at the Audubon Ballroom for a speaking engagement. *Id.* ¶ 192. Plaintiffs claim that audience members were not searched before entering the ballroom, contrary to common practice in past events featuring Malcolm X. *Id.* ¶ 193. According to Plaintiffs, NYPD officers present at the event intentionally concealed their identities. *Id.* ¶ 194. Malcolm X was shot and killed at the Audubon Ballroom event, *id.* ¶¶ 195-202, after which police officers apprehended one of the gunmen at the scene of the murder. *Id.* ¶¶ 203-04.

The FBI allegedly assisted the NYPD in the investigation into Malcolm X's assassination. *See, e.g.*, *id.* ¶¶ 221-23. The FBI "provided the NYPD Defendants with the identities of individuals believed to be present in the Audubon Ballroom at the time of the murder." *Id.* ¶ 221. FBI agents "conducted research and shared information [with NYPD] about persons of interest" and "participated in certain interviews." *Id.* The FBI and NYPD "worked closely together throughout the investigation and prosecution of the case, and there was extensive cooperation and sharing of

information." *Id.* ¶ 222. Plaintiffs allege that "at least ten eyewitnesses . . . were FBI informants in the Audubon Ballroom the day Malcolm X was assassinated . . . . The FBI coordinated these informants' cooperation with the NYPD." *Id.* ¶ 223. Law enforcement, including FBI agents, allegedly pressured Cary Thomas, one of Malcolm X's bodyguards, and other witnesses to cooperate with them and to include false facts in their testimony. *Id.* ¶¶ 234-41.

In 1966, Talmadge Hayer, Muhammed Aziz, and Khalil Islam were all tried and ultimately convicted for Malcolm X's assassination. *See id.* ¶ 230. In November 2021, following a re-investigation of the case, Aziz and Islam's convictions were vacated. *See id.* ¶¶ 291, 310. After the assassination, the FBI and NYPD allegedly suppressed information regarding the true assailants, which "further evidences [their] involvement in the assassination of Malcolm X . . . ." *Id.* ¶ 312.

## B. Procedural Background

Ilyasah Shabazz, Malaak Shabazz, and Gamila Lumumba Shabazz filed substantially identical administrative claims with the Government in late February and early March 2023. Compl. ¶¶ 21, 24-25, 28-29; *see also* Declaration of Deborah A. Edwards dated July 16, 2025 ("Edwards Decl.") ¶¶ 8-10. On or about November 22, 2024, Plaintiffs filed the instant lawsuit bringing the following claims, as relevant here: conspiracy claims under 42 U.S.C. §§ 1983, 1985, and 1986; and claims under the Federal Tort Claims Act for fraudulent concealment; negligence; negligence per se; gross negligence; negligent hiring, retention, and supervision; wrongful death; failure to warn; failure to protect; IIED; right to privacy; conspiracy; and conscious pain and suffering. *See id.* ¶ 390.

## LEGAL STANDARD

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Any waiver of the government's sovereign immunity is to be strictly construed in favor of the government." *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988). On a Rule 12(b)(1) motion, a district court "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. The plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x. 24, 27 (2d Cir. 2011).

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff bears the burden of demonstrating the court's personal jurisdiction over the defendants. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). The complaint's allegations are assumed to be true, and a plaintiff need only make a *prima facie* showing of personal jurisdiction. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). The court construes any pleadings in the light most favorable to the plaintiff and resolves all doubts in plaintiff's favor. *Id.* However, courts should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal citations and quotation marks omitted).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept as true the well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the non-movant, "[t]hreadbare recitals of the elements of a cause of action, supported by

6

mere conclusory statements, do not suffice." *Id.* Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE TIME-BARRED

An FTCA claim "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). The two-year statute of limitations is not jurisdictional and may be equitably tolled in rare circumstances. *United States v. Kwai Fun Wong*, 575 U.S. 402, 413-14 (2015); *see also A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 139 (2d Cir. 2011).

With respect to claims brought in New York under section 1983 or section 1985, the applicable statute of limitations is three years. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997). Federal law determines when a section 1983 or section 1985 cause of action accrues, and the Second Circuit has ruled that "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl*, 296 F.3d at 80 (internal citations and quotation marks omitted). The applicable statute of limitations for section 1986 claims is one year. 42 U.S.C. § 1986.

All of Plaintiffs' claims against the Federal Defendants are barred by the relevant statute of limitations. It cannot be seriously disputed that, even under the diligent discovery rule, these claims accrued decades ago given the significant amount of publicly available information regarding Malcolm X's assassination. And while Plaintiffs likely knew or should have known the critical facts concerning their injuries long ago, they certainly learned those facts at the latest when the "Who Killed Malcolm X?" documentary was released in February 2020. Moreover, Plaintiffs'

claims were not *Heck*-barred prior to the vacatur of Muhammed Aziz and Khalil Islam's convictions for Malcolm X's assassination. Finally, the continuing violation doctrine does not apply, and Plaintiffs have failed to allege sufficient facts to demonstrate that any alleged fraudulent concealment renders their claims timely. Accordingly, their claims should be dismissed.

### A. Plaintiffs Were Aware of the "Critical Facts" Concerning Their Injury No Later than 2020

Under the diligent discovery rule, accrual of an FTCA claim or a Civil Rights Act claim "may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998); *see also Pearl*, 296 F.3d at 80. This is not an "exacting requirement"; a plaintiff must have only "knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." *Kronisch*, 150 F.3d at 121. In short, "[i]t requires only that a plaintiff know or should know enough facts to seek legal advice." *Gilvar v. United States*, No. 09 Civ. 8941 (LTS), 2011 WL 2161866, at *3 (S.D.N.Y. May 26, 2011), *aff'd*, 468 F. App'x 31 (2d Cir. 2012). Further, when "[t]he weight of publicly available information" connects the government to the injury, Plaintiffs "with reasonable diligence, should have discovered the critical facts of both [their] injury and its cause sufficient to file an administrative claim," or to file a lawsuit. *Gilvar*, 468 F. App'x at 33 (citation and internal quotation marks omitted). "[W]hether the plaintiffs *actually* knew the information is not the issue. What counts is that the body of work was generally available to them." *Donahue v. United States*, 634 F.3d 615, 626 (1st Cir. 2011).

Over the past sixty years, the assassination of Malcolm X has been the subject of an extensive amount of public scrutiny and interest. In sum and substance, Plaintiffs allege that the FBI sowed dissent between Malcolm X and the NOI, knew that his assassination was imminent,

and allowed the assassination to occur. *See* Compl. ¶¶ 129-189. Plaintiffs allege that the FBI subsequently concealed the identity of informants who were eyewitnesses or otherwise cooperated with the NYPD. *See id.* ¶¶ 217-228. The information relevant to Plaintiffs' claims—which the Federal Defendants categorically deny—has been in the public domain since at least December 6, 2010, when the FBI published records concerning Malcolm X to its FOIA Library, known as The Vault. *See* FBI Records: The Vault, *Civil Rights*, https://vault.fbi.gov/civil-rights (last visited July 18, 2025).[3] The FBI published even more records in 2011. *Id.* In these collections of documents, which have been publicly available for almost fifteen years, there is extensive documentation concerning Malcolm X, including information provided to the FBI by informants. *See* FBI Records: The Vault, *Malcolm X*, https://vault.fbi.gov/Malcolm%20X (last visited July 18, 2025); FBI Records: The Vault, *Malcolm Little (Malcolm X)*, https://vault.fbi.gov/malcolm-little-malcolm-x (last visited July 18, 2025).

Indeed, certain documents that Plaintiffs cite to bolster their allegations have been publicly available for many years. For example, to support their allegations that the FBI "sow[ed] dissent" between Malcolm X and Elijah Muhammed, Plaintiffs cite a 1969 COINTELPRO memorandum noting that "[f]actional disputes have been developed [within the Nation of Islam]—the most notable being MALCOLM X LITTLE." Compl. ¶ 146. That document has been publicly available on the Vault since at least 2012. *See* FBI Records: The Vault, *COINTELPRO Black Extremist Part 10* at 17, https://vault.fbi.gov/cointel-pro/cointel-pro-black-extremists/COINTELPRO%20Black%20Extremist%20Part%2010/view (last visited July 18,

---

[3] This Court may take judicial notice of these documents because "it is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss." *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011); *see also id.* at 412 (taking judicial notice of documents publicly available on the FDA website).

2025).[4] Moreover, the July 1964 memorandum cited by Plaintiffs demonstrating that they had received some information that "orders to kill" Malcolm X "came from Chicago," was transcribed in the book "Malcolm X: The FBI File," which was initially published in 1991 and then republished in 2012. *Compare* Compl. ¶ 165*, with Malcolm X: The FBI File*, Section 12 https://erenow.org/biographies/malcolm-x-the-fbi-file/15.php (last visited July 18, 2025); *see also* Google Books, Clayborne Carson, *Malcolm X: The FBI File*, https://books.google.com/books/about/Malcolm_X.html?id=wSQ0aB6v6s4C&source=kp_book_ description (detailing publication dates) (last visited July 18, 2025). In addition, to support their allegations that the FBI somehow "affirmatively encouraged, coordinated, and provided the circumstances for the successful assassination of Malcolm X," Compl. ¶ 216, Plaintiffs cite a February 22, 1965 FBI memorandum detailing statements from a source "that the killers of Malcolm X were possibly imported to N.Y.C.," and that "Washington and the C.I.A." should be "checked out . . . because they wanted Malcolm out of the way because he 'snafued' African relations for the U.S.," Compl. ¶ 215. That document has been publicly available on the vault since 2010. *See* FBI Records: The Vault, *Malcolm X Part 23* at 104, https://vault.fbi.gov/Malcolm%20X/Malcolm%20X%20Part%2023/view (last visited July 18, 2025).

In addition, the popular Netflix documentary series "Who Killed Malcolm X?" was released on that platform February 2020. *See* Meagan Flynn, *Malcolm X assassination may be*

---

[4] The same document can be found in a Wayback Machine screenshot dated September 27, 2012. *See* https://web.archive.org/web/20120927203642/http://vault.fbi.gov/cointel-pro/cointel-pro-black-extremists/cointelpro-black-extremists-part-08-of-1/at_download/file (last visited July 18, 2025). "Courts have accepted that the Wayback Machine accurately represents what webpages stated at earlier points in time," and have taken judicial notice of "the contents of a Wayback Machine page to determine when information was first made available to the public . . . ." *Lee v. Springer Nature Am., Inc.,* 769 F. Supp. 3d 234, 249 (S.D.N.Y. 2025).

*reinvestigated as Netflix documentary, lawyers cast doubt on convictions*, The Washington Post (Feb. 10, 2020), https://www.washingtonpost.com/nation/2020/02/10/malcolmx-assassination-netflix/. The series covers in detail Plaintiffs' key allegations that Malcolm X was under surveillance by the FBI, "Who Killed Malcolm X?", *Black Messiah: Ep. 3*; that the authorities knew that he was in danger before his assassination and failed to adequately protect him, *see* "Who Killed Malcolm X?", *Shotgun Man: Ep. 5* at 25:06-27:20; and that a number of FBI informants were eyewitnesses of the assassination, *see* "Who Killed Malcolm X?", *Shotgun Man: Ep. 5* at 41:45-42:30.[5]

In short, by 2020 at the latest, there was an abundance of information in the public domain that put Plaintiffs on notice about the "critical facts" of their claims. *A.Q.C*, 656 F.3d at 140. Despite the large volume of publicly available information, Plaintiffs filed their administrative claims in February and March 2023, and their lawsuit in 2024. *See* Compl. ¶¶ 21, 24-25, 28-29; *see also* Edwards Decl. ¶¶ 8-10. Their claims are therefore time-barred.

**B. Plaintiffs' Claims Were Not *Heck*-Barred Prior to the Vacatur of Aziz and Islam's Convictions**

To the extent that Plaintiffs assert that *Heck v. Humphrey* renders their claims timely, that argument would fail. Nothing about the vacatur of Aziz and Islam's convictions in November 2021 renders Plaintiffs' claims timely. In *Heck v. Humphrey*, the Supreme Court held that where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or

---

[5] The documentary series remains available on Netflix, and the Court may take judicial notice of it. *See Cox v. Perfect Bldg. Maint. Corp.*, No. 16 Civ. 7474 (VEC), 2017 WL 3049547, at *3 (S.D.N.Y. July 18, 2017) (noting that courts may take judicial notice of any facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Mines-Jones v. Spiegel Brands, Inc.*, No. 19 Civ. 1024 (LDH) (LB), 2019 WL 13472339, at *2 n.1 (E.D.N.Y. Apr. 16, 2019) (taking judicial notice of the 2013 animated film "Frozen"); *Freeman v. Rochester Psychiatric Ctr.*, No. 12 Civ. 6045 (MAT), 2017 WL 4169336, at *2 (W.D.N.Y. Sept. 20, 2017) (taking judicial notice of the television show "Dexter").

sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). And in *Greene Johnson v. United States*, the related action brought by Aziz, as well as Islam's estate, this Court held that Aziz and Islam were *Heck*-barred prior to the vacatur of their convictions because their claims are "at bottom, based on their wrongful convictions and decades-long thwarted efforts to clear their names," and that, at least at the motion to dismiss stage, "a finding of liability and an award of damages in Plaintiffs' favor on any claim would necessarily require a conclusion that they were wrongfully convicted." *Greene Johnson v. United States*, 759 F. Supp. 3d 425, 449 (S.D.N.Y. 2024).

But that reasoning does not apply here because Plaintiffs are third parties who have not been convicted of any crime and whose conviction therefore could not be called into question by this lawsuit. *Hincapie v. City of New York* is instructive. In that case, the plaintiff brought section 1983 claims against the City of New York and several individual defendants following the vacatur of his convictions. The defendants moved for summary judgment under *Heck* on the ground that the plaintiff's co-defendants' convictions would necessarily be called into question by the suit. In other words, "Defendants' theory hinge[d] on whether *Heck* also requires dismissal of a plaintiff's . . . suit where a judgment in the plaintiff's favor would imply the invalidity of *somebody else's* conviction or sentence." No. 18 Civ. 3432 (PAC), 2022 WL 2870411, at *7 (S.D.N.Y. July 21, 2022). The court unequivocally answered that question in the negative, reasoning that because the *Heck* doctrine is intended to ensure that plaintiffs do not use litigation as a way to circumvent habeas remedies, it "does not apply where, as here, the 'third-party' plaintiff does not stand convicted of a crime, and therefore lacks a habeas remedy in the first place." *Id.* at *8; *see also Waller v. Smith*, 403 F. Supp. 3d 164, 172 (W.D.N.Y. 2019) (*Heck* does not apply to third-parties);

*Hayward v. Cleveland Clinic Foundation*, 759 F.3d 601, 616 (6th Cir. 2014) (same). Plaintiffs'

failure to timely file their claims does not implicate *Heck*.

### C.  The Continuing Violation Doctrine Cannot Render Plaintiffs' Claims Timely

The continuing violation doctrine similarly does not help Plaintiffs. The continuing

violation doctrine is a "disfavored rule that is applied in rare circumstances." *Sulaiman v. Laram*,

No. 16 Civ. 8182 (CM), 2017 WL 11659746, at *8 (S.D.N.Y. Apr. 4, 2017). Under the "continuing

violation" doctrine, "where there is a series of continuing wrongs," the statute of limitations may

be tolled "to the date of the commission of the last wrongful act." *Ramiro Aviles v. S&P Glob.,

Inc.*, 380 F. Supp. 3d 221, 289 (S.D.N.Y. 2019) (quoting *Henry v. Bank of Am.*, 48 N.Y.S.3d 67,

69-70 (1st Dep't 2017)). However, the continuing violation doctrine "may only be predicated on

continuing unlawful [wrongs] and not on the continuing effects of earlier wrongful conduct."

*Margrabe v. Sexter & Warmflash, P.C.*, No. 07 Civ. 2798 (KMK) (GAY), 2009 WL 361830, at

*7 (S.D.N.Y. Feb. 11, 2009) (quoting *Selkirk v. State*, 671 N.Y.S.2d 824, 825 (3d Dep't 1998))

(alterations in original). In other words, for the statute of limitations to be tolled under this theory,

a plaintiff must "allege that Defendants committed wrongs during the statutory period such that

the continuing violation doctrine would apply." *Panos v. Universal Forest Prods., Inc.*, No. 18

Civ. 2066 (KMK), 2020 WL 416445, at *7 (S.D.N.Y. Jan. 27, 2020).

Nowhere do Plaintiffs allege that the FBI committed any wrongdoing within the statute of

limitations period. While Plaintiffs allege that the FBI concealed the identities of certain

informants in the immediate aftermath of Malcolm X's assassination, *see* Compl. ¶¶ 250-290, that

is insufficient to extend the statute of limitations under the continuing violation doctrine. The mere

failure to correct an alleged wrong does not extend the statute of limitations into perpetuity—the

"law cannot permit a limitations period to depend on a continuing omission that can go on for

13

decades." *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 376 (S.D.N.Y. 2004). A plaintiff cannot benefit from the continuing violation doctrine where, as here, they merely "allege a continuous omission" that "reflects [the] [d]efendant's . . . failure to fix a past wrong . . . as opposed to [the] [d]efendant's committing any new misdeeds." *Gonzales v. Nat'l Westminster Bank, Plc*, No. 11 Civ. 1435 (LAP), 2013 WL 6978874, at *4 (S.D.N.Y. Nov. 18, 2013). Because Plaintiffs have failed to allege that the FBI committed any affirmative wrongdoing within the statute of limitations, the continuing violation doctrine cannot render these claims timely.

**D.    Plaintiffs Are Not Entitled to Equitable Tolling Based On Any Alleged "Fraudulent Concealment"**

Equitable tolling is a "drastic remedy appliable only in rare and exceptional circumstances." *A.Q.C.*, 656 F.3d at 144 (citation, alteration, and internal quotation marks omitted). Under the fraudulent concealment doctrine, "where [a] defendant is responsible for concealing the existence of plaintiff's cause of action, [the Second Circuit] has held equitable tolling appropriate." *Veltri v. Building Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004). "To show fraudulent concealment, a plaintiff must establish that: (1) the defendant concealed the existence of the cause of action from the plaintiff; (2) the concealment prevented plaintiff's discovery of the claim within the limitations period; and (3) the plaintiff's ignorance of the claim did not result from a lack of diligence." *Saint-Jean v. Emigrant Mortgage Co.*, 129 F.4th 124, 143 (2d Cir. 2025). "Where a defendant's fraudulent concealment gives rise to equitable tolling, the statute of limitations is tolled until 'the plaintiff either acquires actual knowledge of the facts that comprise his actions or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.'" *Grynberg v. Eni S.p.A.*, No. 06 Civ. 6495 (RLC), 2007 WL 2584727, at *4 (S.D.N.Y. Sept. 5, 2007) (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985)).

Plaintiffs have not alleged in their complaint why, despite the vast amounts of information in the public domain detailed above, they did not make any efforts to pursue their rights until February 2023. While Plaintiffs vaguely allege that there is "continuing fraudulent concealment by the DOJ, FBI, [and the] CIA," Compl. ¶ 15, that would not save their claims—"[t]he relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of a cause of action." *Veltri*, 393 F.3d at 323. Because at the absolute latest (and likely long before), Plaintiffs learned of the facts underlying this action in February 2020, *see supra* pp. 8-11, their claims are not timely under the fraudulent concealment doctrine.

## II.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' TORT CLAIMS BECAUSE PLAINTIFFS FAILED TO SATISFY THE FTCA'S PRESENTMENT REQUIREMENT

Plaintiffs' tort claims fail for another, independent reason: Plaintiffs failed to satisfy the FTCA's presentment requirement. "The United States, as sovereign, is immune from suit unless it waives immunity and consents to be sued." *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019) (citation omitted). A waiver must be "strictly construed . . . in favor of the sovereign." *U.S. Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). The FTCA requires claimants to exhaust their administrative remedies before filing suit. *See* 28 U.S.C. §§ 1346(b)(1), 2671-2680; *see also McNeil v. United States*, 508 U.S. 106, 111 (1993). That requirement "is jurisdictional and cannot be waived." *Celestine v. Mt. Vernon Neighborhood Health*, 403 F.3d 76, 82 (2d Cir. 2005) (citations omitted).

Before a plaintiff files suit, she "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). The FTCA requires administrative exhaustion

in order to encourage settlement of tort claims by the relevant agency. *See, e.g.*, *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998) ("*Romulus II*"). An administrative claim must be detailed enough to enable the federal agency to evaluate the claim. *See* 28 C.F.R. § 14.4. Failure to present facts sufficient to permit investigation and settlement of the claim constitutes failure to exhaust administrative remedies. *See Romulus II*, 160 F.3d at 132; *Johnson by Johnson v. United States*, 788 F.2d 845, 848-49 (2d Cir. 1986). Therefore, "the adequacy of presentment turns on whether the information the claimant provides is sufficient to serve the purposes underlying § 2675(a) . . . ." *Lee v. U.S. Dep't of Army*, No. 11 Civ. 331 (RRM) (CLP), 2013 WL 4048329, at *4 (E.D.N.Y. Aug. 9, 2013). Specifically, the Second Circuit recently clarified that:

> [p]resentment requires . . . a claimant to provide the reviewing agency with sufficiently specific information as to the basis for his claim, the nature of his injuries, and the amount of damages sought that the agency can reasonably understand what it must probe to determine liability, to value the claim, and to assess the advisability of settlement.

*Collins v. United States*, 996 F.3d 102, 119 (2d Cir. 2021).

Here, Plaintiffs failed to meet the presentment requirement with respect to their tort claims. All three individual Plaintiffs filed substantively identical administrative claims, none of which provided the Government with sufficient information to develop a reasonable understanding of the basis for the claims. Edwards Decl. Exs. A-C. At most, they provided vague, conclusory assertions devoid of any factual content that might inform the agency about which theories of potential liability Plaintiffs were pursuing. For example, in the administrative claims, Plaintiffs state that they were "caused to suffer personal injuries . . . due to the carelessness, negligence, and fraudulent concealment of evidence of [the federal defendants]." Edwards Decl. Ex. A-C. They further state that the Federal Defendants "conspired with each other and with other individuals and acted, and failed to act, in such a way as to bring about the wrongful death of Malcolm X . . . ." *Id.* They

16

continue: "As a direct result of [the federal defendants'] intentional bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions, Malcolm X was robbed of his life and freedom . . . [and claimant] was robbed of [their] father and deprived of his companionship and his financial, spiritual, emotional, and moral guidance and support . . . ." *Id.* They conclude: the Federal Defendants "knowingly and fraudulently withheld information, factual evidence, and exculpatory evidence from [claimants]" and "acted in a concerted and fraudulent manner to prevent [claimants] from becoming aware of their conduct, omissions, and actions, as well as the identity of undercover informants and the planning of Malcolm X's death." *Id.* "All damages occurred as a result of the above-described negligence of respondents." *Id.*

Those conclusory assertions do not elucidate the theories of liability that Plaintiffs advance in this litigation or otherwise provide the Government with adequate notice of the tort claims that Plaintiffs now pursue. The administrative claims do not identify which acts or omissions the Government should have investigated as potential bases for liability under any tort theory. Plaintiffs do not identify which Government actor might have been negligent or how. *See generally id.* The claims similarly did not provide sufficient information upon which the Government might investigate a claim for fraudulent concealment: There is no claim regarding what was concealed, by whom, when, or for what purpose. *Id.* The administrative claims similarly fail to provide notice of the bases for any wrongful death, conspiracy, failure to warn, failure to protect, right to privacy, conscious pain and suffering, or IIED claim. *Id.* Any investigation based on these administrative claims would have required conjecture. The entire purpose of the presentment requirement is to protect federal agencies from having to investigate blindly, as Plaintiffs' administrative claims required here.

Other courts in this Circuit have dismissed suits where the administrative claims were

similarly vague and conclusory. For example, in *Guzman v. United States Postal Service*, the plaintiff submitted an SF-95 that alleged negligence in connection with a car accident. No. 21 Civ. 4415 (LAK) (RWL), 2022 WL 17169529, at *1 (S.D.N.Y. Nov. 17, 2022) (Report & Recommendation, subsequently adopted by the district court). In the administrative claim, the plaintiff alleged that the "USPS's truck sideswiped claimant's vehicle, claimant was caused to suffer serious injuries to multiple parts of his body." *Id.* Plaintiff described his injuries further: he sustained "serious injuries to his head, neck, shoulders, arms, hands and back." *Id.* The court concluded that that notice of claim "was not sufficient to satisfy the FTCA's jurisdictional presentment requirement" because the plaintiff had "included only a vague account of the incident and an overly general description of his injuries." *Id.* at *3. In *Romulus*, the plaintiff similarly filed a vague administrative claim which stated that the plaintiff "was injured as the result of being struck from behind by the postal truck." *Romulus v. United States*, 983 F. Supp. 336, 337 (E.D.N.Y. 1997) ("*Romulus I*"). The plaintiff provided "[t]he date, time, and approximate location of the accident," "but there was no identification of the driver of the truck, the number of the vehicle, or any other information pertinent to the claim, such as medical records." *Id.* The district court concluded that plaintiff could not "maintain an action after submitting a conclusory form that provided no information." *Id.* at 342. The Second Circuit affirmed, explaining that "[a] claim must be specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims." *Romulus II*, 160 F.3d at 132. Although those cases involve motor vehicle accidents, the same principle applies here: Plaintiffs submitted barebones administrative claims that failed to put the Government on notice as to the nature of Plaintiffs' claims. Such "conclusory statements . . . afford[ed] [the Government] no reasonable opportunity to investigate." *Id.*

To be sure, "an administrative claim need not meet formal pleading requirements." *Johnson*, 788 F.2d at 848. "All that is necessary is that a claim be specific enough to serve the purposes intended by Congress in enacting § 2675(a): to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Id.* at 848-49 (internal quotation marks omitted). But the presentment clause is violated where, as here, plaintiffs fail to elucidate their theories of liability and strip agencies of the ability reasonably to investigate the claims. *See, e.g.*, *Schwartz v. United States*, No. 19 Civ. 7846 (VSB), 2020 WL 5578505, at *1-2 (S.D.N.Y. Sept. 17, 2020) (dismissing negligence claims where plaintiff failed to notify the agency about the bases for those claims, and noting that "when a notice of claim asserts one cause of action, but fails to assert a different cause of action comprised of unique elements, such notice does not meet the FTCA's exhaustion requirement for the latter claim"); *Young v. U.S.*, No. 12 Civ. 2342 (ARR) (SG), 2014 WL 1153911, at *9 (E.D.N.Y. Mar. 20, 2014) (dismissing negligence claim where plaintiff's administrative claim included a general assertion, "Negligence in ICE security custody," but failed to identify the specific bases for holding the government liable); *Lassic v. United States*, No. 14 Civ. 9959 (KBF), 2015 WL 5472946, at *4 (S.D.N.Y. Sept. 16, 2015), *aff'd*, 668 F. App'x 395 (2d Cir. 2016) (medical malpractice claim in SF-95 did not provide the requisite specificity to administratively exhaust failure to warn and negligent hiring claims).

Plaintiffs failed to satisfy the FTCA's presentment requirement; the Court therefore lacks jurisdiction over their tort claims.

### III.    PLAINTIFFS' NEGLIGENCE CLAIMS FAIL UNDER RULE 12(B)(1) AND RULE 12(B)(6)

#### A. Plaintiffs Fail to State Any Negligence Claims Because the FBI's Alleged Misconduct Was Intentional, Not Negligent

Plaintiffs' negligence claims—including negligence, gross negligence, negligence per se, and negligent hiring, retention, and supervision, *see* Compl. ¶ 390—fail because they are premised on intentional conduct; none of the acts that allegedly give rise to Plaintiffs' negligence claims are inadvertent, accidental, or anything but willful. In introducing the complaint, Plaintiffs assert that the FBI engaged in tortious conduct when it "*actively* concealed, condoned, protected, and facilitated" violence against Malcolm X. *Id.* ¶ 2 (emphasis added). They allege that the Federal Defendants "encouraged the assassination of Malcolm X" and deliberately failed to protect him. *Id.* ¶ 10. Throughout the complaint, Plaintiffs repeatedly allege that FBI employees acted intentionally and knowingly. They allege generally that the Government and its personnel "were aware of, and involved in, the assassination of Malcolm X, and *knowingly* failed to prevent it or to protect Malcolm X from being assassinated." *Id.* ¶ 36 (emphasis added). Then-FBI Director Hoover allegedly "participated in the assassination of Malcolm X, and/or knew about it happening and did not act to prevent it and participated in the subsequent cover-up." *Id.* ¶ 42. According to Plaintiffs, the same is true for other Government officials. *Id.* ¶¶ 43-51. Plaintiffs assert that FBI leaders knowingly and purposely targeted Malcolm X for surveillance and harassment as part of a broader attack on "the Black liberation struggle." *Id.* ¶ 109; *see id.* ¶¶ 105-119. They allege that the FBI sought to "neutraliz[e] Malcolm X." *Id.* ¶ 131. The FBI allegedly sought to foment divisions between Malcolm X and the NOI, *id.* ¶¶ 131-134, 146, including by "sending an anonymous letter about Elijah Muhammad's alleged extramarital affairs," *id.* ¶ 132. Plaintiffs allege that the FBI attempted to bribe Malcolm X, *id.* ¶ 138, and was aware of threats to Malcolm

X's life, *see, e.g.*, *id.* ¶¶ 165, 172, 175, yet purposefully failed to prevent the assassination and "instead . . . continued to encourage it," *id.* ¶ 177.

According to Plaintiffs, the FBI played a role in the arrest of two of Malcolm X's bodyguards in a deliberate attempt "to weaken Malcolm X's security, which knowingly facilitated his assassination." *Id.* ¶ 183. And the FBI "affirmatively encouraged, coordinated, and provided the circumstances for the successful assassination of Malcolm X." *Id.* ¶ 216; *see also id.* ¶ 249. Plaintiffs further allege that, following the assassination, the FBI suppressed evidence regarding the true assailants. *See, e.g.*, *id.* ¶¶ 300-302. The only factual allegations regarding FBI personnel, including supervisors and leadership, involve intentional conduct and deliberate decisions. There are no factual allegations that suggest that the alleged misconduct by FBI personnel was borne out of laziness, incompetence, or neglect.

A negligence claim cannot flow from intentional conduct of the sort alleged in the complaint. *See Ortiz v. City of New York*, No. 15 Civ. 2206 (DLC), 2016 WL 7009059, at *3 (S.D.N.Y. Nov. 30, 2016) (citing *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993)) ("A claim of harm predicated solely on intentional acts may not give rise to a claim of negligence."). For example. in *Fiedler v. Incandela*, plaintiff brought claims, including for negligence and malicious prosecution, against individual police officers and two counties in connection with his arrest and prosecution for criminal possession of stolen property. 222 F. Supp. 3d 141, 152-53 (E.D.N.Y. 2016). He claimed that the police had falsely accused him of moving stolen property. *Id.* at 163. The court dismissed plaintiff's negligence claim because the defendants "acted intentionally at all relevant times, and Plaintiff fails to identify any inadvertent or accidental harmful conduct." *Id.* at 167; *see also Forbes v. City of Rochester*, 612 F. Supp. 3d 159, 171 (W.D.N.Y. 2020) (dismissing negligence claim where it was "premised on the same intentional

conduct underlying his excessive force, assault, and battery claims"); *Frederique v. Cty. of Nassau*, 168 F. Supp. 3d 455, 484 (E.D.N.Y. 2016) (same). The same applies here.

Plaintiffs' negligence claims should therefore be dismissed pursuant to Rule 12(b)(6).

### B. No Private Analogue Exists Under New York Law for Negligence Under Similar Circumstances

The FTCA's waiver of sovereign immunity only applies "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Plaintiffs' negligence claims fail to meet that statutory requirement; the Court therefore lacks jurisdiction over their claims.

To the extent Plaintiffs' complaints can be construed to allege mere negligence—which, as argued above, they cannot—the claims are foreclosed by the absence of a private-person analogue. Indeed, there is no standalone duty to prevent harm to third parties; that duty only arises in narrow circumstances, not alleged here, where there is a special, clearly defined relationship and where the alleged tortfeasor has custody or control over the plaintiff. *See, e.g.*, *Ben v. United States*, 160 F. Supp. 3d 460, 464-66, 469-70, 477-79, 482 (N.D.N.Y. 2016) (concluding that the U.S. Probation and Pretrial Services Office had the sort of special relationship that gives rise to a duty to prevent harm, where it "had sufficient authority and ability to control those aspects of [the releasee's] behavior upon which Plaintiffs are relying"). "[A]bsent a special relationship, a defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter [the] defendant can exercise such control." *David v. Weinstein Co. LLP*, 431 F. Supp. 3d 290, 305 (S.D.N.Y. 2019) (internal quotation marks and

alterations omitted).[6]

Plaintiffs' negligence claims should therefore be dismissed under Rule 12(b)(1).

### C. Plaintiffs Fail to State a Claim for Negligent Hiring, Retention, and Supervision

Plaintiffs' claim for negligent hiring, retention, and supervision fails for yet another, independent reason. To maintain a claim against an employer for negligent supervision under New York law, a plaintiff must adequately allege that the employee's allegedly tortious conduct occurred outside the scope of employment. *See generally Doe v. Guthrie Clinic, Ltd.*, 22 N.Y.3d 480, 485 (2014). "[W]here a plaintiff is tortiously injured by an employee acting within the scope of his employment, courts routinely dismiss claims for negligent training and supervision as unnecessary, since the employer will be liable based on *respondeat superior* regardless of whether there was negligent training or supervision." *Ben*, 160 F. Supp. 3d at 476 (collecting cases); *Salamone v. United States*, 618 F. Supp. 3d 146, 153 (S.D.N.Y. 2022) ("New York law precludes a claim for negligent training or negligent supervision against an employer for acts taken within the scope of the employee's employment."); *see Lamb v. Baker*, 152 A.D.3d 1230, 1231 (4th Dep't 2017) (affirming dismissal of negligent supervision claim because plaintiff "failed to allege that [defendant] committed an act of negligence outside the scope of his or her employment").

Here, Plaintiffs do not allege that any of the supposedly negligent supervisory acts were committed by FBI employees outside the scope of their employment. *See generally* Compl. The opposite is true: Plaintiffs expressly allege that, "[a]t all times material to this case, the FBI Defendants . . . whose actions are referred to herein, were acting within the scope of their

---

[6] To the extent that the Court construes Plaintiffs' negligence claims as arising in whole or in part from the FBI's role in the investigation into Malcolm X's assassination, the Court has previously concluded—in a related matter—that "[t]he Second Circuit has disallowed FTCA claims based on negligent investigation in New York." *Greene Johnson v. United States*, 759 F. Supp. 3d 425, 451 (S.D.N.Y. 2024) (quoting *Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017)).

employment . . . ." *Id.* ¶ 389. Because the FTCA waives sovereign immunity only for claims that are cognizable in the state where the alleged negligence occurred, 28 U.S.C. § 1346(b)(1), this Court lacks subject matter jurisdiction over Plaintiffs' negligent hiring, retention, and supervision claim. *See Lassic*, 2015 WL 5472946, at \*4 ("this court does not have jurisdiction over an FTCA action based on a legal claim that is unavailable in the state where the act occurred").

## IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs' IIED claim similarly fails as a matter of law. IIED "'is a theory of recovery that is to be invoked only as a last resort,'" and is therefore "'precluded where the offending conduct is embraced by a traditional tort remedy.'" *EEOC v. Die Fliedermaus, L.L.C.*, 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999) (quoting *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 682 N.Y.S.2d 167, 169 (1st Dep't 1998)). Here, according to Plaintiffs, the conduct alleged falls within the ambit of several other torts, "including, but not limited to, . . . fraudulent concealment, wrongful death, negligence, gross negligence, failure to warn, failure to protect, . . . right to privacy, conspiracy, conscious pain and suffering, negligent hiring, retention, supervision . . . and negligence per se . . . ." Compl. ¶ 390. Therefore, plaintiffs' IIED claim is precluded. *See, e.g., Aurrecchione v. Falco*, No. 22 Civ. 4538 (NSR), 2023 WL 6255529, at \*15 (S.D.N.Y. Sept. 25, 2023) (dismissing IIED claim and observing: "state courts and federal courts applying New York law have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory"); *Brewton v. City of New York*, 550 F. Supp. 2d 355, 370 (E.D.N.Y. 2008) (same).

Moreover, plaintiffs have failed to allege the elements of an IIED claim, which are "rigorous, and difficult to satisfy." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993) (internal quotation marks omitted); *see also Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158

(2d Cir. 2014) (IIED "remains a highly disfavored tort under New York law") (internal quotation marks omitted). The tort has four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id*. (internal quotation marks omitted). "Thus, it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id*. (internal quotation marks and alterations omitted).

Here, Plaintiffs' allegations that the FBI failed to protect Malcolm X and withheld information in the alleged investigation into his assassination, while undoubtedly serious, nonetheless do not meet this rigorous standard. *Stuto*, 164 F.3d at 827; *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 56-57 (2016) (noting that "of the [IIED] claims considered by this Court, *every one* has failed because the alleged conduct was not sufficiently outrageous") (internal quotation marks omitted; emphasis in original).[7]

---

[7] The Government recognizes that this Court concluded in a related action that the plaintiffs there had adequately alleged the elements of an IIED claim. *See Greene Johnson v. United States*, 759 F. Supp. 3d 425, 451 (S.D.N.Y. 2024). However, this Court based its decision on the allegations that FBI officials "fabricated evidence and withheld exculpatory information to ensure that two innocent men would spend the prime of their lives in prison . . .," *id.*, allegations that do not apply to Plaintiffs' claims in this action.

## V.   PLAINTIFFS FAIL TO STATE CLAIMS FOR THEIR OTHER ALLEGED TORTS

### A.  Fraudulent Concealment

Plaintiffs have not adequately stated a claim of fraudulent concealment against the Federal Defendants. Fraudulent concealment consists of the same requisite elements of fraudulent misrepresentation, including justifiable reliance by the plaintiff on the defendant's representations, in addition to the defendant having a duty to disclose material facts but failing to do so. *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 124-25 (E.D.N.Y. 2011); *see also De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 424 (S.D.N.Y. 2015). In New York, a duty to disclose emerges from "a fiduciary relationship between plaintiff and defendant." *Ferring B.V. v. Allergan, Inc.*, 932 F. Supp. 2d 493, 511 (S.D.N.Y. 2013); *see also Spencer v. Green*, 842 N.Y.S.2d 445, 446-47 (2d Dep't 2007). Plaintiffs do not allege any fiduciary relationship between Plaintiffs and any of the Federal Defendants. Rather, Plaintiffs posit that Malcolm X rebuffed the Federal Defendants' alleged efforts to bribe or recruit him. Compl. ¶ 138. And, as previously discussed, Plaintiffs do not allege that the Federal Defendants assumed or affirmatively undertook a special relationship with Malcolm X of the sort that might create a special duty of protection, warning, or disclosure to him or his family. Without any fiduciary duty, there can be no duty to disclose as an element of fraudulent concealment. As such, Plaintiffs have not stated a claim for fraudulent concealment.

Likewise, Plaintiffs do not adequately allege reliance on any of the Federal Defendants' statements. To establish reliance, a plaintiff must show both that they relied on a defendant's misrepresentations and that this reliance was reasonable. *Washington Cap. Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 366 (S.D.N.Y. 2005); *see also Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*, 665 N.Y.S.2d 415, 417 (1st Dep't 1997). Plaintiffs fail to allege any such reliance. In fact, Plaintiffs allege that Malcolm X was aware of threats to his life, including

26

numerous prior attempts to kill him. Compl. ¶¶ 149, 152, 166, 180, 184, 185. They do not allege that any of the Federal Defendants undertook to guarantee Malcolm X's safety, that the Federal Defendants made any such representation to Malcolm X, that Malcolm X (or anyone else) relied on any such representation, or that such reliance was reasonable. *Brown v. City of New York*, 73 A.D.3d 1113, 1114 (2d Dep't 2010). The same is true for the alleged investigation into Malcolm X's assassination. Because Plaintiffs have not adequately alleged that the Federal Defendants had a duty to disclose information or that Plaintiffs reasonably relied on any misrepresentations by the Federal Defendants, their fraudulent concealment claim fails.

### B. Failure to Warn and Failure to Protect

Plaintiffs have similarly failed to state a claim for failure to warn or failure to protect under New York law. Plaintiffs allege that the Federal Defendants knew that Malcolm X was in danger and failed to prevent his assassination. *See* Compl. ¶¶ 148-216. But, as explained above, Plaintiffs allege that Malcolm X was well aware of the danger that he faced from certain members of the NOI; it is not clear based on the allegations in the Complaint what information the FBI had a duty to impart that was not already known by Malcolm X. *See, e.g.*, *id.* ¶ 167 (noting that Malcolm X said that he "went few places without constant awareness that any number of [his] former brothers felt they would make heroes of themselves in the Nation of Islam if they killed [him]"); *id.* ¶¶ 180-181 (alleging that following a firebombing at Malcolm X's home "one week before his assassination[,]" Malcolm X allegedly said "The attempt was made upon my life because I speak my mind and I know too much, and they know that I will speak it." (internal quotation marks omitted)).

In any event, the Government "may not be held liable for the failure to provide police protection because the duty to provide such protection is owed to the public at large, rather than to

any particular individual." *Brown,* 73 A.D.3d at 1114 (citation omitted). A "narrow exception to the rule exists where a special relationship exists between the municipality and the injured party or parties." *Id.* (citation omitted). To demonstrate the requisite special relationship, a plaintiff must allege "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured, (2) knowledge on the part of the municipality's agents that inaction could lead to harm, (3) some form of direct contact between the municipality's agents and the injured party, and (4) the injured party's justifiable reliance on the municipality's affirmative undertaking." *Id.* (citation omitted). Plaintiffs fail to allege that the Federal Defendants assumed an affirmative duty to protect Malcolm X. To the contrary, they allege that the Federal Defendants "affirmatively encouraged, coordinated, and provided the circumstances for the successful assassination of Malcolm X," Compl. ¶ 216, and "ensure[d] that they did not impede the murders from slaying Malcolm X," *id.* ¶ 249. Plaintiffs cannot have it both ways—the FBI cannot both have allegedly created the conditions for his assassination and have undertaken an affirmative duty to prevent it. Moreover, as argued above, Plaintiffs have failed to allege that Malcolm X justifiably relied on any affirmative undertaking by the Federal Defendants.

Therefore, Plaintiffs' failure to warn and failure to protect claims should be dismissed.

## C. Right to Privacy

Plaintiffs' right to privacy claims should likewise be dismissed. The FTCA waives sovereign immunity only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). It is well established that "New York law does not . . . recognize any common law right to privacy." *Goel v. Dep't of Justice,* No. 03 Civ. 579 (HB), 2003 WL 22047877, at *4 (S.D.N.Y. Aug. 29, 2003) (citing *Howell,* 81 N.Y.2d at 123). Accordingly, courts

within this District have found that the United States has not waived sovereign immunity for a "right to privacy" claim under New York law and have dismissed FTCA claims predicated on this theory. *See, e.g.*, *Wright v. Belafonte*, No. 12 Civ. 7580 (GBD) (RLE), 2014 WL 13111397, at \*25 (S.D.N.Y. Mar. 11, 2014), *report and recommendation adopted*, 2014 WL 1302632 (S.D.N.Y. Mar. 31, 2014); *Goel*, 2003 WL 22047877, at \*4.

### D.  Wrongful Death, Conscious Pain and Suffering, and Conspiracy

Plaintiffs' wrongful death, conscious pain and suffering, and conspiracy claims should also be dismissed because, under New York law, each of these torts depend on the presence of a predicate valid cause of action. *See Cruz v. City of New Rochelle*, No. 13 Civ. 1342 (LMS), 2017 WL 1402122, at \*30 (S.D.N.Y. Apr. 3, 2017) (dismissing wrongful death claim where all other predicate tort claims were dismissed because Plaintiffs could not "establish a 'wrongful act, neglect, or default' to support the claim" (citation omitted)); *Weiner v. Miller*, No. 22 Civ. 7081 (GRB) (ARL), 2023 WL 6385816, at \*5 (E.D.N.Y. Sept. 29, 2023) (dismissing wrongful death and conscious pain and suffering claims for failure to allege a wrongful act); *Kovkov v. Law Firm of Dayrel Sewell, PLLC*, 182 A.D.3d 418, 418-19 (1st Dep't 2020) ("New York does not recognize an independent cause of action for civil conspiracy, which may only be asserted to connect actions of separate defendants to an underlying tort . . . . To assert a civil conspiracy claim, the complaint must allege a cognizable cause of action . . . ."). Because Plaintiffs have failed to allege any viable underlying torts under New York law, *see supra* pp. 20-29, their wrongful death, conscious pain and suffering, and conspiracy claims should be dismissed. Moreover, their conspiracy claim fails for the additional reason that there are no particularized conspiracy allegations in the complaint. *See Kovkov*, 182 A.D.3d at 419 ("Bare, conclusory allegations of conspiracy are insufficient."); *infra* pp. 31-34.

VI.    **PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL FEDERAL DEFENDANTS FOR CONSPIRACY UNDER SECTIONS 1983, 1985, 1986 FAIL AS A MATTER OF LAW**

Plaintiffs' claims against the individual federal defendants—whom the Plaintiffs term the "FBI Defendants" in their complaint—for conspiracy under Sections 1983, 1985, and 1986 should be dismissed for three independent reasons: the claims are time-barred, the Court lacks personal jurisdiction over the Estate defendants, and Plaintiffs have failed to state a valid claim.

### A.  Plaintiffs' Claims Are Time-Barred

For the reasons discussed previously, Plaintiffs' section 1983, 1985, and 1986 claims against the Individual Federal Defendants are time-barred. *See supra* pp. 7-15.

### B.  Plaintiffs Have Failed to Establish That the Court Has Personal Jurisdiction Over the Estates

In addition, Plaintiffs have failed to establish that the Court has personal jurisdiction over the Estate of Clyde Anderson Tolson on behalf of J. Edgar Hoover, the Estate of William C. Sullivan, the Estate of George C. Moore, the Estate of Richard McGarrah Helms, the Estate of Dale Sutton, or the Estate of August Micek. *See, e.g.*, *Wilmington Tr. v. Estate of McClendon*, 287 F. Supp. 3d 353, 373 (S.D.N.Y. 2018) ("[U]nder New York law, '[a]n estate is not a legal entity and any action for or against the estate must be by or against the executor or administrator in his or her representative capacity."). As the City of New York wrote in its April 25, 2025 letter to the Court, *see* ECF No. 97, "Plaintiffs have yet to identify even a single individual who is named in the Complaint for which there is a presently-existing estate." (citing *Water Energizers, Ltd. V. Water Energizers, Inc.*, 788 F. Supp. 208, 211 (S.D.N.Y. 1992) (Plaintiff failed to make even a

*prima facie* showing of personal jurisdiction where the estate of defendant did not exist and was wound up prior to service)).[8]

### C. Plaintiffs Fail to State a Claim for Relief

#### a. Section 1983

Plaintiffs cannot state a claim for relief against the Individual Federal Defendants under 42 U.S.C. § 1983 because that statutory provision "appl[ies] only to state actors, not federal officials." *Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005); *accord Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n.4 (2d Cir. 1991). To be sure, Plaintiffs allege that the Individual Federal Defendants conspired with State actors, and the Second Circuit has recognized that "[a] federal officer who conspires with a state officer may act under color of state law." *Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009). "But since federal officials typically act under color of *federal* law, they are rarely deemed to have acted under color of state law." *Id.* (internal quotation marks omitted) (emphasis in original). Here, Plaintiffs have not adequately alleged that any of the Individual Federal Defendants acted under color of state law. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (to establish liability under Section 1983, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution" and personally participated in the alleged constitutional deprivation).

Even if Plaintiffs had adequately alleged that any (or all) of the Individual Federal Defendants acted under color of state law, Plaintiffs' section 1983 claim should still be dismissed

---

[8] The Government understands that, in a scheduling order dated May 27, 2025, the Court allowed Plaintiffs to address the issues related to service on the Estate defendants in their opposition brief and for the City of New York to file a response by September 5, 2025. *See* ECF No. 106. The Government here does not provide full briefing on the issue but instead raises it for sake of issue preservation. The Government intends to respond more fully to whatever points Plaintiffs make in opposition, either directly or by incorporating by reference the City of New York's response.

because Plaintiffs have not adequately alleged an agreement between any of the Individual Federal Defendants and one or more state actors. The allegations regarding conspiracy between Individual Federal Defendants and state officials are conclusory at best. For example, in the middle of a lengthy discussion of tactics allegedly employed by FBI officials as part of COINTELPRO, Plaintiffs allege: "These methods and tactics also included working with, and otherwise utilizing local law enforcement agencies, including but not limited to the NYPD, in implementing and accomplishing their unconstitutional and illegal goals." Compl. ¶ 117. That allegation is vague and conclusory and fails to identify which, if any, of the Individual Federal Defendants engaged in the alleged conduct. Plaintiffs further allege that, in November 1959, certain officials focused on "neutralizing Malcolm X," *id.* ¶ 131; in May 1960, certain officials sought to drive a wedge between Malcolm X and Elijah Mohammad by circulating rumors of Elijah Muhammad's alleged extramarital affairs, *id.* ¶¶ 132-33; in February 1964, an unnamed FBI official visited Malcolm X's home and attempted to bribe him, *id.* ¶¶ 137-38; in March 1964, the FBI New York Special Agent in Charge sent a memorandum to Defendant Hoover regarding surveillance of Malcolm X's home, *id.* ¶ 141; in April 1964, Defendant Hoover recommended that Malcolm X's residence be surveilled, *id.* ¶ 142; in June 1964, Defendant Hoover sent a telegram to the FBI office in New York instructing them to "do something about Malcolm X," *id.* ¶ 144; and in July 1964, the FBI learned of a threat to Malcolm X's life, *id.* ¶ 165. None of these allegations reference any agreement between any of the Individual Federal Defendants and any state actor, and most fail to identify which, if any, of the Individual Federal Defendants participated in the alleged conduct.

In the few instances where Plaintiffs do allege coordination between Individual Federal Defendants and state officials, they do so in conclusory fashion. For example, Plaintiffs allege that the arrests of two of Malcolm X's bodyguards in February 1965 "were coordinated by the BOSSI

defendants and the Federal Defendants to weaken Malcolm X's security, which knowingly facilitated his assassination." *Id.* ¶ 183. They allege that, "[i]nstead of ensuring Malcolm X's protection, the FBI and BOSSI Defendants actively worked to ensure Malcolm X's vulnerability by reducing his hired protection." *Id.* ¶ 212; *see also id.* ¶ 249 ("The FBI, NYPD, and BOSSI Defendants, both named and as of yet unidentified, made sure that police officers were nearby but not present in the Audubon Ballroom to ensure that they did not impede the murderers from slaying Malcolm X."). They allege that the FBI and state officials collaborated on the investigation into Malcolm X's murder, *see, e.g., id.* ¶¶ 221-24; that the Individual Federal Defendants "jointly acted and/or conspired . . . to commit the unconstitutional overt acts set forth in the facts above," *id.* ¶ 365, and took those actions "under the color of state law and caused Malcolm X to be subjected to . . . deadly force," *id.* ¶ 366; "caused the Estate of Malcolm X and his Plaintiff-heirs to be denied access to the Courts," *id.* ¶ 367; deprived Malcolm X of the equal protection of the laws due to "racial, political and religious animus toward Malcolm X and Plaintiffs," *id.* ¶ 368; neglected or refused to prevent Malcolm X's assassination, *id.* ¶ 369; and conspired to "neutralize, cripple and destroy Malcolm X," *id.* ¶ 375. But none of those allegations specify which Individual Federal Defendant engaged in the alleged misconduct, much less when, how, or with whom they entered in any agreement that might give rise to a conspiracy claim under color of state law.[9] Instead, Plaintiffs advance conclusory allegations and threadbare recitals of the elements of the claim.

Accordingly, Plaintiffs' section 1983 claim fails.

---

[9] In fact, the most detailed allegation regarding any of the FBI Defendants' relationship with state actors is then-Director Hoover's purported instruction *not* to disclose to the NYPD the FBI informant status of any witness in the murder investigation. *See* Compl. ¶ 301(b).

### b. Section 1985

"To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988). A section 1985 plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end," *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotations marks omitted), and allege that that conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," *United Bhd. Of Carpenters & Joiners v. Scott*, 463 U.S. 825, 834-35 (1983). A complaint alleging conspiracy must plead the relevant acts "with at least some degree of particularity," *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999), and "[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss," *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983); *see also Williams v. Reilly*, 743 F. Supp. 168, 173 (S.D.N.Y. 1990) ("Unsubstantiated, conclusory, vague or general allegations of a conspiracy to deprive constitutional rights are not enough to survive a motion to dismiss.") (citations omitted).

For the reasons stated above, Plaintiffs' allegations do not satisfy these requirements.

### c. Section 1986

Section 1986 "provides a cause of action against anyone who[,] having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Mian v. Donaldson, Lufkin & Jenrette Securities*

*Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (internal quotation marks omitted). Thus, "a § 1986 claim must be predicated on a valid § 1985 claim." *Id.* Since Plaintiffs have failed to plead a valid claim for relief under 42 U.S.C. § 1985, there is no basis for a claim under 42 U.S.C. § 1986.

## CONCLUSION

For the reasons stated herein, the Government's motion to dismiss should be granted.

Dated: July 18, 2025
        New York, New York

                              Respectfully submitted,

                              JAY CLAYTON
                              United States Attorney for the
                              Southern District of New York

                    By:    */s/ Danielle J. Marryshow*
                              ILAN STEIN
                              DANIELLE J. MARRYSHOW
                              JEFFREY S. OESTERICHER
                              Assistant United States Attorneys
                              86 Chambers Street, Third Floor
                              New York, New York 10007
                              Telephone: (212) 637-2525/-2689/-2695
                              E-mail: ilan.stein@usdoj.gov
                                  danielle.marryshow@usdoj.gov
                                  jeffrey.oestericher@usdoj.gov

35